ERNEST AND NORMAN HART BROTHERS, INC. *vs.*
TOWN CONTRACTORS, INC.

Essex.   March 13, 1984. — April 26, 1984.

Present: ARMSTRONG, CUTTER, & PERRETTA, JJ.

*Contract,* Choice-of-forum clause. *Practice, Civil,* Choice of forum, Parties, Amendment. *Conflict of Laws. Joint Enterprise.*

Discussion of the enforceability of provisions by which the parties to a contract purport to bind themselves to a selection of the forum in which disputes under the contract shall be adjudicated. [62-65]

While acknowledging the modern view favoring contractual choice-of-forum provisions, this court concluded that, in an action on a contract which had been fully tried on the merits in Massachusetts, it would be inequitable and uneconomical to give effect to a provision requiring disputes under the contract to be adjudicated in Connecticut, inasmuch as it appeared that, when the parties entered the contract in 1972, the prevailing decisional law would not have given effect to the choice-of-forum provision; that in this instance the choice-of-forum provision may have been the result of disparity in the parties' bargaining power; and that the Connecticut statute of limitations would probably bar relief in that State. [65-67]

A judge properly allowed amendment of the pleadings in a civil action to show the correct name of the corporate plaintiff. [67]

Further proceedings were required, following the jury-waived trial of a contract action, to permit the judge to determine whether the plaintiff, who had entered the contract as one of two joint venturers, had succeeded to the rights of the other joint venturer. [67-69]

CIVIL ACTION commenced in the Superior Court on September 9, 1974.

Motions to dismiss and for partial summary judgment were heard by *Adams*, J., and the case was heard by *Meyer*, J.

*John C. Wyman* (*Anne H. Stossel* with him) for the defendant.

*Laurence P. Melia* for the plaintiff.

CUTTER, J. The plaintiff is a Massachusetts corporation engaged in electrical contracting. In 1972 and thereafter, that corporation, Ernest and Norman Hart Brothers, Inc. (Hart), formed May 8, 1972, operated in Lawrence an electrical business which previously had been conducted by two brothers under the name of Hart Brothers. Under date of June 27, 1972, the new corporation, as sole subcontractor, undertook by written agreement with Town Contractors, Inc. (Town), a Connecticut corporation, to do work (not involved in the present case) on a building to be used by Sears, Roebuck & Company at a shoppers' mall (the mall) in Methuen. The mall then was being developed by Town's parent corporation, First Hartford Realty Corporation, also a Connecticut corporation. Town was the general contractor for the project.

Hart, using an abbreviated name (Hart Bros. Inc.) made a proposal to Town to do further electrical work at the mall (not in any way connected with the Sears, Roebuck subcontract). Negotiations then ensued and a joint venture[1] consisting of Hart and Decker Electrical Corporation (Decker) was arranged to perform certain electrical work as subcontractor for Town. The subcontract considered in this opinion, dated October 10, 1972, was made between (a) Town, as general contractor, and (b) Hart (signing as "Hart Bros. Co.") and Decker, as joint venturers and subcontractors. This subcontracted work was performed by them during 1973 and 1974.

The present action[2] was brought in Essex County, Massachusetts, and was heard on the merits by a Superior Court judge, sitting without a jury. A motion to dismiss and a motion

[1] Town apparently felt that in some respects Hart was overextended on the Sears, Roebuck subcontract with it (which the trial judge found Hart had finished and for which it had been paid). For that reason, Decker was obtained as a joint venturer with Hart to supply adequate labor resources.

[2] The trial judge allowed an amendment designating the plaintiff (and the defendant in counterclaim) as "Ernest and Norman Hart Brothers, Inc." The trial judge ruled that this corporation succeeded to all the rights in connection with the mall contract and "that it is the real party in interest in this litigation." Problems raised by Town with respect to the recognition of the present Hart corporation as plaintiff are discussed in part 2 of this opinion, *infra*.

for partial summary judgment (discussed below in part 1 of this opinion) were denied on January 31, 1975. Town, in its brief, admits that at trial there "was disputed evidence concerning Hart['s] and Decker's performance under the subcontract and . . . oral changes to add alleged extra work." Town also concedes that "[m]ost of these disputes were determined against" Town by the trial judge and also that "as findings of fact they are not the subject of this appeal."

The trial judge ordered judgment for Hart (a) for a balance due it, under the subcontract and for extras, of $61,209 and interest, and (b) dismissing Town's counterclaim on the merits. Town has appealed.

1. *Choice of forum.* The subcontract contained a provision reading, "18. *Disputes.* Connecticut law shall have jurisdiction in the event of a legal dispute between the parties to this contract, and such disputes shall be adjudicated in Hartford County." This provision (hereafter "Article 18") appeared immediately above the signatures of Town, Hart, and Decker to what appear to be the general conditions of the contract. In a paragraph numbered "1A, *Definitions,*" subparagraph (h) reads, "*Governing Law.* The law of the place of building shall govern the construction of the Contract," which may be viewed by some as inconsistent with Article 18 if the first part of that article is to be regarded as a choice of law provision.

Town's motions to dismiss and for partial summary judgment, denied January 31, 1975, were based upon Article 18 as being essentially a contractual choice of forum. Town's contention, on this part of the case, is that Article 18 should be enforced strictly in accordance with what Town argues is the trend of the modern decisions on contractual choices of forum, and that Hart's action in Massachusetts should be dismissed. As Town's indebtedness, if any, based on the subcontract arose prior to the commencement of Hart's present action in 1974, a new action by Hart in Connecticut presumably would be barred by the six-year statute of limitations on contract actions in force in that State. See Conn. Gen. St. § 52-576 (1973).

The Massachusetts decisions, in general but not always, have disregarded forum selection provisions in contracts or treated them as invalid. In 1856, the Supreme Judicial Court considered a provision of an insurance company's by-laws, that an action upon a claim under an insurance contract "shall be brought at a proper court in the county of Essex." The court (opinion by Shaw, C.J.) decided that this by-law did not provide a defense to an action brought in Suffolk county. See *Nute* v. *Hamilton Mut. Ins. Co.*, 6 Gray 174, 179, 182-185 (1856), generally regarded as treating forum selection provisions as to be disregarded. See also *Cobb* v. *New England Mut. Marine Ins. Co.*, 6 Gray 192, 204 (1856, treating as invalid a contractual provision for arbitration); *Amesbury* v. *Bowditch Mut. Fire Ins. Co.*, 6 Gray 596, 603 (1856, following the *Nute* case).

Early in this century two cases regarded the *Nute* decision as inapplicable to the particular facts then presented. In *Daley* v. *People's Bldg. Loan and Sav. Assn.*, 178 Mass. 13, 18-20 (1901), the Supreme Judicial Court (per Holmes, C.J.) held that an action on a membership certificate in a New York corporation could not be brought in Massachusetts where the certificate provided that the association could be sued only in Ontario County, in the State of New York. The opinion (at 19) distinguished, but expressly did not overrule, the *Nute* case. In *Mittenthal* v. *Mascagni*, 183 Mass. 19, 21-25 (1903), the court dealt with a provision in a contract made in Italy, between an Italian composer and his agent, for concerts in the United States. The contract gave exclusive jurisdiction of certain disputes under the contract to an Italian court in Florence. The decision recognized (at 23) that, in a contract of this character, the provision was reasonable. The opinion (at 24) said that the case was "quite unlike" the *Nute* case.

Later Massachusetts cases have followed the *Nute* decision. See *Norcross Bros.* v. *Vose*, 199 Mass. 81, 93-94 (1908), holding that an arbitration clause did not prevent court action to recover liquidated damages specified in the contract, where an arbitration award had not "been made a condition precedent to a right to sue"; *Nashua River Paper Co.* v. *Hammermill*

*Paper Co.,* 223 Mass. 8, 13-19 (1916, where, per Rugg, C.J., the principle of the *Nute* case was strongly supported and applied). In *Cadillac Automobile Co.* v. *Engeian,* 339 Mass. 26, 30 (1959), the court referred to the line of decisions following the *Nute* case without intimating what its decision would have been if the validity of what, in a sense, was a forum selection clause had been before it. Compare *Diversified Mortgage Investors* v. *Viking Gen. Corp.,* 16 Mass. App. Ct. 142, 144, 147-149 (1983), where consent to suit in Massachusetts was relied on as support for allowing an action here. The *Nute* principle was in earlier days consistent with the view then prevailing in the Federal courts. See, e.g., *Insurance Co.* v. *Morse,* 87 U.S. (20 Wall.) 445, 451 (1874); *Wood & Selick, Inc.* v. *Compagnie Generale Transatlantique,* 43 F.2d 941, 942 (2d Cir. 1930, where L. Hand, J., recognized the then state of the law). See also 6A Corbin, Contracts §§ 1445-1446 (1962, but compare same sections in supp. 1984).

The *Nute* hostility to forum selection provisions has now been modified in the Federal courts, at least in cases where the contractual choice of forum was reasonable and resulted in no substantial injustice and where the provision was not found in an adhesion agreement, of a type often resulting where the bargaining strength of the contracting parties is not equal. See *The Bremen* v. *Zapata Off-Shore Co.,* 407 U.S. 1 (1972). This was an admiralty case in which the opinion, at 15, stated that, "in the light of present-day commercial realities . . . [a] forum clause should control, absent a strong showing that it should be set aside," or that "enforcement would be unreasonable and unjust," or that the clause was invalid for such reasons as fraud or overreaching. See also *Scherk* v. *Alberto-Culver Co.,* 417 U.S. 506, 518-520 (1974).

The United States Court of Appeals for the First Circuit, and the Federal District Courts in this circuit, in effect, have adopted essentially what is now regarded as the modern view. See *Fireman's Fund American Ins. Co.* v. *Puerto Rican Forwarding Co.,* 492 F.2d 1294, 1296-1297 (1st Cir. 1974). There it was said that forum clauses "should be enforced unless enforcement is shown . . . to be 'unreasonable' under the cir-

cumstances," in the light of considerations of the type mentioned in the *Zapata* case, 407 U.S. at 15-16. See also *St. Paul Fire & Marine Ins. Co.* v. *Travelers Indem. Co.,* 401 F. Supp. 927, 929 (D. Mass. 1975); *Northeast Theatre Corp.* v. *Edie and Ely Landau, Inc.,* 563 F. Supp. 833, 834-835 (D. Mass. 1983, although the opinion noted [at 834] that if Massachusetts law were to control venue, the result would be different); *C. Pappas Co.* v. *E. & J. Gallo Winery,* 565 F. Supp. 1015 (D. Mass. 1983).

The general attitude of courts toward contractual forum selection provisions obviously has changed in the direction of recognizing them. See Restatement (Second) of Conflict of Laws § 80 and comment a (1971); Restatement of Foreign Relations Law of the United States (Revised) § 492(2)(f), and comment h and Reporters' Note 5 (Tent. Draft No. 4, at 116-125, 1983); 15 Wright & Miller, Federal Practice and Procedure § 3803 (1976 & Supp. 1983); 1 Moore's Federal Practice § 0.140[1-3-2] (2d ed. 1983 & Supp. 1983-1984); Ehrenzweig, Conflict of Laws § 41 (1959), and authorities cited; see also *Kolendo* v. *Jerell, Inc.,* 489 F. Supp. 983, 984-985 (D. W.Va. 1980). Compare 14 Williston, Contracts, § 1725, at 912-913 (3d ed. 1972); 6A Corbin, Contracts, § 1445 (Supp. 1984). In the light of present day trends, attorneys advising clients probably would be unwise to rely on the persistence of the *Nute* principle in future Massachusetts cases where the parties purport to bind themselves by a contractual choice of forum provision and no special considerations make it unjust to enforce the parties' agreement. The matter before us, however, does not make necessary (cf. *Burke* v. *Toothaker,* 1 Mass. App. Ct. 234, 239 [1973]) any disregard of principles recognized by the Supreme Judicial Court when last considered in 1959, although perhaps with some misgiving, see the *Cadillac* case, 339 Mass. at 30.[3]

---

[3] Counsel should be aware that the Supreme Judicial Court has recognized the validity of contractual provisions (a) for arbitration in a particular State, see *Maxwell Shapiro Woolen Co.* v. *Amerotron Corp.,* 339 Mass. 252, 257-261 (1959); and (b) for reasonable selection of the law to govern a transaction. See *Morris* v. *Watsco, Inc.,* 385 Mass. 672, 675-678 (1982); Restatement (Second)

Various considerations lead to the conclusion that it would be unjust to Hart to enforce the forum selection provision in Article 18: (1) The subcontract was made in October of 1972. The *Zapata* case was decided by the Supreme Court in June of 1972, and at first was regarded as applicable primarily to admiralty litigation. By October, 1972, there had not been time for the decision to influence adoption of the modern view by State courts. Counsel could not have been sure then (and, indeed, even now cannot be certain) that Massachusetts will follow that newer view. If the Supreme Judicial Court should now decide to do so, it well may adopt the modern view prospectively only and in very flexible form. Compare *Sullivan v. Burkin*, 390 Mass. 864, 870-872 (1984). (2) There is here some indication (from the fact that it appears in both subcontracts with Town to which Hart was a party) that Article 18 was part of a standard set of general conditions imposed by the larger general contractor upon its presumably smaller subcontractors by "boiler plate" terms, thus carrying overtones of an adhesion contract between parties of disparate bargaining power. (3) All considerations of efficient judicial administration support treating this case, now fully tried on the merits, as one which should not be dismissed in Massachusetts, leaving Hart to seek whatever remedy in Connecticut remains available.[4] (4) Given the probability that the Connecticut statute of limitations concerning contracts will bar relief in that State,[5] considerations of justice support allowing Hart to recover, as

---

of Conflict of Laws § 187 (1971). See also Fine, Massachusetts Contract Cases and Problems in the Choice of Law, 43 Mass.L.Q. (No. 3) 46 (1958).

[4] Considerations relating to the convenience of Massachusetts as the forum also have some relevance in a case where the subcontracted work was performed wholly in Massachusetts and where Town found it necessary at trial to bring only three witnesses from Connecticut.

[5] See, for a case in which a court remitted a plaintiff to an action in the court chosen by the parties under a forum selection provision, subject to the defendant's agreement to waive the statute of limitations in force at the chosen forum, *Paterson, Zochonis (U.K.) Ltd.* v. *Compania United Arrows, S.A.,* 493 F.Supp. 626, 631 (S.D. N.Y. 1980).

soon as possible, its fairly earned compensation, already unduly delayed.[6]

Even if we were justified in applying the modern view on forum selection provisions only prospectively, we regard the modern view as flexible and one where all equitable considerations will be taken into account. We think that application of the modern view should be precluded in any event upon this record by the considerations of fairness which have been enumerated in the preceding paragraph.

2. *Identity of Hart as the plaintiff.* The trial judge, on this record, reasonably allowed amendment of the pleadings to show the true name of the corporate plaintiff Hart. Hart's prior subcontract with Town (using Hart's correct corporate name) in June, 1972, amply informed Town of the identity of Hart and those acting for it. See note 2, *supra.* The record shows no possibility of confusion of Hart with other Massachusetts corporations with similar names, situated at wholly different addresses and formed for different purposes. Obviously, Hart's officers were dangerously confused and careless, probably because not well versed in corporate practices, in using different abbreviated names instead of their corporations's exact name. Nevertheless, we perceive nothing in *Massachusetts Assn. of Indep. Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.,* 373 Mass. 290, 296-297 (1977), or in Mass.R.Civ.P. 17(a), 365 Mass. 763-764 (1974), requiring a wholly unrealistic failure by any court to recognize Hart as the real party in interest. See *Henderson* v. *D'Annolfo,* 15 Mass. App. Ct. 413, 428 (1983).

3. *Failure to join Decker as a plaintiff.* The trial judge concluded that "Hart, having paid Decker in full for its work under the [sub]contract, has succeeded to all of Decker's rights against Town." This conclusion had support in the evidence. There was testimony (see note 1, *supra*), as the trial judge found,

---

[6] Justice Perretta would rest this decision solely on the grounds stated in subparagraph (4) of this paragraph, which she regards as a sufficient showing of the injustice of enforcing the choice of forum provision in this case. She does not agree that the facts of this case adequately support the grounds set out in the other subparagraphs.

that originally at least Hart and Decker were joint venturers. Ernest Hart testified that he "bought Decker . . . out of the contract, so . . . [that it, Hart] could proceed with a law suit." Stephen Decker, called by Hart, testified without suggesting that Decker (with which he had been connected in the years through 1974) then was owed anything by Town. There was testimony that Decker had become bankrupt. Little information, however, about the date or the circumstances of the bankruptcy proceedings appears in the record.

It may be that the record sufficiently supports the judge's findings about Hart's acquisition of Decker's rights under the joint venture and thus being able to proceed by itself against Town.[7] We think that this phase of the case calls for more specific subsidiary findings as a basis of the trial judge's conclusions mentioned in the preceding paragraph.[8] Town, before the judgment against it is enforced, should have somewhat more substantial assurance (than is apparent from the present record) that no further claim will or can be asserted against it by Decker or Decker's bankrupt estate on account of Town's liability upon the subcontract. That no such claim has been asserted by Decker or its bankrupt estate in ten years, of course, is indication that no such claims exists. Also, it may be that the record can be adequately amplified by agreement of the parties.

The judgment for Hart is reversed. The case is remanded for prompt further proceedings, preferably before the same

---

[7] The Massachusetts cases concerning joint ventures are collected in *Eastern Elec. Co.* v. *Taylor Woodrow Blitman Constr. Corp.*, 11 Mass. App. Ct. 192, 196-199 (1981), and in *Shain Investment Co., Inc.* v. *Cohen*, 15 Mass. App. Ct. 4, 7-11 (1982). We perceive no respect in which Town has been harmed, if Town did not consent (or was not asked to consent) to Hart's asserted purchase of Decker's interest in the joint venture.

[8] These subsidiary findings might well include more precise findings about any settlement within the joint venture, before or following a letter, dated April 2, 1973, in the record concerning some confusion in the joint venture's internal accounting. If hearings are reopened, there might well be proof whether the Decker bankruptcy schedules showed any asset consisting of a claim against either Town or Hart. Evidence concerning the billing practices of the joint venture while performing the contract may be relevant.

trial judge, confined to the issue discussed in part 3 of this opinion. Costs of this appeal may be awarded in the discretion of the Superior Court judge who makes the determination of the issue now remanded.

*So ordered.*