Doyle, P.J.
This is an action for breach of contract instituted in the Framingham Division of the District Court Department by Charles River Data Systems, Inc. (“Charles River”), a Massachusetts corporation, against Integrated Management Systems of America, Inc. (“IMSA”), a Georgia corporation. Service was made pursuant to G. L. c. 223A, the Massachusetts Long Arm Statute.
IMSA entered a special appearance and filed a Dist./Mun. Cts. R. Civ. P., Rule 12(b)(2) motion to dismiss the action on the grounds of lack of personal jurisdiction. IMSA’s motion was denied by the trial court, and, following the entry of final judgment, the present appeal ensued.
The report indicates that the parties negotiated both a contract for IMSA’s purchase of an integrated computer system from Charles River (the “Discount Agreement”), and Software Licensing Agreements which provided for IMSA’s use, development and future sublicensing of computer programs created by Charles River. In an affidavit in support of its Rule 12(b) motion to dismiss, IMSA’s president averred that all contract negotiations took place in Georgia and were conducted by Charles River’s regional representative, one Will Gossage, who was principally based in Dallas, Texas. IMSA asserted that all correspondence from Charles River relative to the contracts was mailed from Texas by Gossage; and that the parties’ final Discount Agreement was executed by IMSA in Georgia and forwarded to Gossage in Texas. IMSA further averred that it has no place of business and no employees in Massachusetts; that it has never solicited or conducted business in this Commonwealth; that it never transacted any business with any Massachusetts representatives of Charles River, nor received goods or services from Massachusetts.
In opposition to the defendant’s Rule 12(b)(2) motion, Charles River submitted an affidavit of its Comptroller, the parties’ March IS, 1984 Discount Agreement, the Binary Software License Agreement, and a Purchase Order signed by IMSA. Charles River averred that although IMSA’s president signed the Discount Agreement in Georgia on March 13,1984, said document did not *180 become a binding contract until accepted and executed in Massachusetts by Charles River’s Vice President on March 15,1984. Article II, Paragraph 12(B) of the parties’ Discount Agreement in fact expressly states:
“This Agreement is made in, and is governed by and shall be construed in accordance with the laws of, the Commonwealth of Massachusetts.”
Pursuant to the Agreement and in response to IMSA’s “verbal inquiry” of March 16, 1984, Charles River issued a written price quotation for certain specified goods to IMSA. In accordance with Article I, Paragraph l.(d) of the parties’ Discount Agreement, which provided that “[deliveries will only be scheduled upon receipt of a duly executed purchase order from Buyer”, IMSA forwarded a written Purchase Order dated April 2, 1984 to Charles River in Massachusetts for $32,650.00 worth of computer equipment, software and services. The Purchase Order indicated that shipment was “[t]o be arranged under separate cover.” Article II, paragraphs l(s) and (b) of the Discount Agreement stated, inter alia:
“All shipments shall be made F.O.B. Point of Manufacture, freight and insurance collect.... Risk of loss shall pass to the Buyer at the time of delivery to a common carrier.... Title will pass to Purchaser upon delivery....”
Charles River averred that the terms of the parties’ April 2,1984 transaction specified “F.O.B. Framingham, Massachusetts.” Charles River also averred that the basis of its breach of contract suit against IMSA is the Purchase Order in question. No details of the nature or substance of IMSA’s alleged breach of contract are set forth in the report before this Division.
A non-resident defendant’s challenge to the exercise by a Massachusetts court of personal jurisdiction over him imposes upon the plaintiff the burden of advancing sufficientfact upon which jurisdiction maybe lawfully predicated. Raleigh Rug Co. v. R.A. Civitello Co., 23 Mass. App. Ct. 1025 (1987); Brandi v. National Bulk Carriers, Inc., 14 Mass. App. Ct. 916, 917 (1982). This burden entails satisfaction of a two-prong, constitutional and state statutory jurisdictional test. The plaintiff must advance evidence both that affirmative, intentional acts by the defendant vis-a-vis Massachusetts are encompassed by one of the statutory prerequisites for jurisdiction set forth in G. L. c. 223A, Sec. 3; and that the defendant’s connection with the forum state is such that due process will not be offended by compelling the defendant to answer suit in this Commonwealth. C.H. Babb Co. v. A. M. Mfgr. Co., 14 Mass. App. Ct. 291, 293-294 (1982); Burtner v. Burnham, 13 Mass. App. Ct. 158, 161-162 (1982). General Laws c. 223A, Sec. 3
“asserts jurisdiction over the person to the constitutional limit only when some basis for jurisdiction enumerated in the statute has been established. Although presented with jurisdictional facts sufficient to survive due process scrutiny, a judge would be required to decline to exercise jurisdiction if the plaintiff was unable to satisfy at least one of the statutory prerequisites.”
Morrill v. Tong, 390 Mass. 120, 129 (1983), quoting from Good Hope Industries, Inc. v. Ryer Scott Co., 378 Mass. 1, 6 (1979).
The Exercise by the Framingham District Court of personal jurisdiction over IMSA herein maybe deemed authorized by G. L. c. 223A, Sec. 3 which gives rise to long-arm jurisdiction over a non-resident defendant who “transacts any business in this Commonwealth” either directly or through an agent. IMSA signed a commercial contract which was formally executed in Massachusetts and intended to be performed in Massachusetts. Such activity constitutes the *181 transaction of business within the purview of G. L. c. 223A. See Carlson Corp. v. University of Vermont, 380 Mass. 102, 106 (1980). Charles River’s breach of contract action against IMSA also arose out of the sales transaction initiated by IMSA’s purchase order of April 2,1984 for the sale and delivery of goods in Massachusetts.
The Massachusetts locus of both the execution of, and anticipated performance under, the parties’ Agreement also represent significant contacts with the forum state to be weighed in applying the constitutional test for an exercise of long-arm jurisdiction in this case. Saporita v. Litner, 371 Mass. 607, 608 (1976). The defendant contends that its contractual dealings with Charles River constituted only a single commercial transaction in Massachusetts, and that its contacts with this state are thus constitutionally insufficient to permit the exercise of jurisdiction by a Massachusetts court. The Fourteenth Amendment of the United States Constitution indeed guarantees that personal jurisdiction over a non-resident defendant must be premised upon “certain minimum contacts” with the forum state “such that the maintenance of suit does not offend traditional notions of fair play and substantial justice,” International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) because the defendant should "reasonably anticipate being haled into court there.” WorldWide Volkswagen Corp. v. Woodson, 444 U.S. 286, 296-197 (1980). It is elementary that due process thus precludes the exercise of long arm jurisdiction predicated on nothing more than an isolated transaction, with only slight effect on the commerce of the forum state, which evidences no purposeful conduct or intent on the part of the defendant to “avail itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.” Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 159 (1978), quoting from Hanson v. Denckla, 357 U.S. 235, 253 (1958). See also, e.g., Hood v. American M.A.N. Corp., 20 Mass. App. Ct. 937, 939-940 (1985); Brandi v. National Bulk Carriers, Inc., supra, at 918.
Jurisdictional analysis is, however, particularly“sensitive to the facts of each case,” Good Hope Industries, Inc. v. Ryder Scott Co., supra at 2, and the defendant’s simplistic categorization of its Massachusetts contacts as limited to an isolated transaction cannot alter the salient aspects of its commercial undertaking with Charles River. IMSA in fact negotiated with a Massachusetts corporation for a long-term commercial undertaking, which culminated in the execution of a contract in Massachusetts, for several purchases by IMSA of goods to be produced, sold and delivered in Massachusetts. IMSA also executed a Software Licensing Agreement with Charles River for the use, development and future sublicensing of computer programs created by the Massachusetts corporation. Although the impact of the parties’ undertaking on Massachusetts commerce would not appear to be significant, see Nichols Assoc., Inc. v. Starr, 4 Mass. App. Ct. 91, 96 (1976), the Commonwealth’s interest in providing an effective means of redress for its citizens for breach of Massachusetts contracts must be balanced against IMSA’s interests herein. Balloon Bouquets, Inc. v. Balloon Telegram Delivery, Inc., 18 Mass. App. Ct. 935, 937 (1984), Finally, IMSA’s isolated transaction argument obscures the significance of Article II, Paragraph 12(b) of the parties Agreement which provides that the contract shall be governed by, and construed in accordance with, Massachusetts law. This choice of law provision signifies the defendant’s intentional election to avail itself of the “benefits and protections” of Massachusetts law. See Ross v. Ross, 371 Mass. 439, 442 (1976). In short, no unfairness of constitutional proportion would attend compelling IMSA to defend against Charles River’s breach of contract action in the courts of this *182 Commonwealth.
Accordingly, the denial of the defendant’s Dist./Mun.Cts. R. Civ. P., Rule 12(b)(2) motion to dismiss is hereby affirmed.
Report dismissed.