Furnari, J.
Plaintiff Graphics Leasing Corp. (“Graphics”), a Massachusetts corporation, financed a lease agreement which was executed for the purchase of printing equipment by defendant The Y Weekly, a newspaper in Austin, Texas. A written guaranty of the lease agreement was signed by the defendant’s publisher, Jerry D. Angerman (“Angerman”), a Texas businessman.
Upon the defendants’ default in installment payments, Graphics instituted this breach of contract suit in the Waltham Division of the District Court Department to recover $25,003.23 plus interest, costs and attorneys’ fees pursuant to lease terms.
The defendants filed a Dist/Mun. Cts. R. Civ. P., Rule 12(b) (2) motion to dismiss the action on jurisdictional grounds. After hearing, the trial court allowed the dismissal motion, ruling that
there are insufficient ‘contacts’ to warrant the Commonwealth of Massachusetts to assert jurisdiction over either defendant Also, in fairness, the defendants ought to be afforded the opportunity to defend themselves in Texas. See Charles River Data Systems, Inc. v. Integrated Management Systems of America, Inc., 1989 Mass. App. Div. 179, 192 and cases cited.
Graphics now claims to be aggrieved by the court’s allowance of the defendants’ Rule 12(b) (2) motion, and judgment of dismissal.
1. The defendants’ motion to dismiss was predicated on the following assertions: (1) that the defendants maintained no contacts with this Commonwealth sufficient to permit a Massachusetts court to exercise jurisdiction under either the Due Process Clause of the Fourteenth Amendment or the Massachusetts Long-Arm Statute, G.Lc. 223A, §1 et. seq.; and (2) that Massachusetts is an inconvenient forum for the defendants whose witnesses are all in Texas, but who allege that a trial is necessary to resolve unspecified issues of law and fact which they purportedly will raise in their defense.
Graphics concedes that the defendants’ contacts with Massachusetts were insuffi-cientto permit an exercise of long-arm jurisdiction in this case. Graphics instead relies solely upon the following forum selection clause contained in the lease agreement[2] executed by both parties:
This Agreement shall be considered to be a Massachusetts contract and shall be deemed to have been made in Middlesex County, Massachusetts, regardless of the order in which the signature of the parties shall be affixed *111 hereto, and shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the law and in the courts of the Commonwealth [emphasis supplied].
The dispositive issue on this appeal is, therefore, whether a contractual forum selection clause is enforceable in this Commonwealth so as to permit or require a Massachusetts court to assume jurisdiction over contractual disputes arising in other states.
2. The defendants contend that forum selection clauses are unenforceable in Massachusetts. This argument is derived from the seminal case oi Nute v. Hamilton Mut. Ins. Co., 6 Gray (72 Mass.) 174 (1856) in which the Supreme Judicial Court held that a venue clause in an insurance contract, which required that any action thereon “shall be brought at a proper court in the county of Essex,” was not binding on the plaintiff-insured so as to require dismissal of the suit commenced in Suffolk County. Until recently, and in consequence oiNute, “Massachusetts decisions, in general but not always, have disregarded forum selection provisions in contracts or treated them as invalid.” Ernest & Norman Hart Bros., Inc. v. Town Contractors, Inc., 18 Mass. App. Ct. 60, 63 (1984). It is essential to note, however, that although Ñute has never been overruled, its anachronistic reasoning, modified by subsequent cases and now in conflict with current law, renders doubtful the continued viability of this antiquated precedent.
In justifying its rule in 1856 that forum selection clauses were unenforceable, the Nute Court noted that such clauses would promote forum shopping and impose tremendous burdens upon the courts in applying foreign law, and that there was no existing authority upon which to evaluate such clauses. Id. at 184-185. Such analysis no longer reflects current law. First, contractual choice of law provisions which require courts to interpret and apply foreign law are recognized as enforceable in Massachusetts. See Morris v. Watsco, Inc., 385 Mass. 672, 674 (1982). Second, there is now considerable federal and state authority for the validity of forum selection clauses which renders Nute the minority rule. The “modem rule” (see discussion, infra) adopted by the federal courts, including the First Circuit Court of Appeals and Federal District Court for Massachusetts, is that a forum selection clause is “prima facie valid and should be enforced unless enforcement is shown by the resisting party to be ‘unreasonable’ under the circumstances.” M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972). See also, Fireman’s Fund Amer. Ins. Co. v. Puerto Rican Forwarding Co., 492 F.2d 1294, 1297 (1st Cir. 1974); LFC Lessors, Inc. v. Pearson, 585 F. Supp. 1362, 1364 (D. Mass. 1984).
Moreover, the original rationale of Nute was largely abandoned in subsequent cases, including those which actually followed the Atonde. See, as to cases adhering to Nute, Nashua River Paper Co. v. Hammermill Paper Co., 223 Mass. 8, 13-19 (1916); Norcross Bros. v. Vose, 199 Mass. 81, 93-94 (1908); Amesbury v. Bowditch Mut. Fire Ins. Co., 6 Gray (72 Mass.) 596, 603 (1856); Cobb v. New England Mut. Marine Ins. Co., 6 Gray (72 Mass.) 192, 204 (1856). The Nute rule was instead justified in terms of the invalidity of any attempt by parties “to place limitations by contract... upon the powers of courts as to actions growing out of the particular contract, or to oust appropriate courts of their jurisdiction....” Nashua River Paper Co. v. Hammermill Paper Co., supra at 16.[3] Although not overruling Nute, other cases factually distinguished its rule *112 because in such cases “there [was] no occasion for the protection of the dignity or convenience of the [Massachusetts] courts.” Mittenthal v. Moscagni, 183 Mass. 19, 23 (1903).[4]
It is indeed evident from any analysis oí Nute and its subsequent case development that there is no Massachusetts rule which constitutes an absolute bar to the enforcement of all forum selection clauses.[5] Nute would instead appear to stand for only the limited proposition that
a forum selection clause entailing contractual consent to the jurisdiction of any other court will not be enforced by a Massachusetts court which itself has competent jurisdiction and chooses to exercise the same. ... [S]uch clauses... [do] not compel initial action in the other court, or... require the dismissal or transfer of an action commenced in the courts of the Commonwealth.
Leasefirst v. Decot Bros., 1990 Mass. App. Div. 177, 178. As the forum selection clause in the parties’ lease agreement in the instant case does not bar a Massachusetts court from adjudicating the parties’ controversy, but in fact provides for the commencement of suit in Massachusetts, such clause is not necessarily rendered invalid or unenforceable by Nute. Compare J.S.B. Industries, Inc. v. Bakery Machinery Distributors, Inc., 1991 Mass. App. Div. 1.
3. Having determined thatNwfe does not automatically preclude enforcement of the parties’ forum selection clause, the remaining issue is whether such clause may serve as the sole basis for an exercise of jurisdiction by the trial court in this case. In the last three decades, the Supreme Judicial Court of this Commonwealth has neither directly overruled Nute, nor specifically accorded it continuing precedential value.[6] Recent case comment suggests, however, that a recognition of the modem, federal rule has now replaced the last vestiges of Massachusetts’ former hostility toward forum selection clauses which originated with Nute.
In its 1984 decision in Ernest & Norman Hart Bros., Inc. v. Town Contractors, Inc., 18 Mass. App. Ct. 60, the Massachusetts Appeals Court acknowledged the modem view favoring contractual choice of forum provisions. Although ultimately ruling the contract clause, which required suit in Connecticut, to be unenforceable on the grounds, inter alia, of unfairness and judicial economy, the Court stated:
The general attitude of courts toward contractual forum selections provisions obviously has changed in the direction of recognizing them, [citations *113 omitted]. In the light of present day trends, attorneys advising clients probably would be unwise to rely on the persistence of the Nute principle in future Massachusetts cases where the parties purport to bind themselves by a contractual choice of forum provision and no special considerations make it unjust to enforce the parties’ agreement. The matter before us does not make necessary... any disregard of principles recognized by the Supreme Judicial Court when last considered in 1959, although perhaps with some misgiving....
Id. at 65. The Supreme Judicial Court has since commented by way of dicta that:
We see nothing inherently inappropriate in a forum selection clause [see Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12 (1972); Ernest & Norman Hart Bros. v. Town Contractors, Inc., 18 Mass. App. Ct. 60, 65 (1984)].... The clause in this case simply is not such a clause.
W. R. Grace & Co. v. Hartford Accid. & Indem. Co., 407 Mass. 572, 582 n.13 (1990).
The Bremen rule, cited with approval by the Supreme Judicial Court, imposes “a heavy burden of proof,” Id. at 17, 92 S. Ct. at 1917, upon the party resisting enforcement of a forum selection clause to establish that its enforcement under the circumstances of the case is clearly unreasonable because of fraud, undue influence, overweening bargaining power or such serious inconvenience in litigating in the selected forum that the defendant is effectively deprived of his day in court. Fireman’s Fund Amer. Ins. Co. v. Puerto Rican Forwarding Co., supra at 1297. The defendants in the instant case contend only that the forum selection clause at issue was a boilerplate provision of a standard lease form not specifically negotiated by the defendants who were in a bargaining position inferior to the plaintiffs, that all of their witnesses are inTexas and that defendant Angerman would suffer “severe economic hardship and logistical disadvantage” if compelled to defend against this suit in Massachusetts.
The use of boilerplate language in a standard form agreement is not per se fraudulent or oppressive so as to render a forum selection clause unenforceable. Midwest Mech. Construct., Inc. v. Tampa Constructors, Inc., 659 F. Supp. 526 (W.D. Mo. 1987); Heller Financial, Inc. v. Nutra Food, Inc., 655 F. Supp. 1432 (N.D. Ill. 1987). The clause at issue in fact appears prominently on the first page of a two page agreement in print larger than the boilerplate terms set forth on the second page. See Bense v. Interstate Battery Sys. of Amer., 683 F.2d 718, 722 (2d Cir. 1982). The report also suggests that equipment sale and contract terms were negotiated by defendants’ company officers and that Angerman enjoyed several opportunities to review the lease prior to signature. Angerman is a sophisticated and experienced businessman who, until recent financial reversals attributable to the Texas recession, accumulated extensive real estate holdings, the development of which presumably afforded him some acumen in the negotiation and review of commercial contracts. See C. Pappas Co. v. E&J Gallo Winery, 565 F. Supp. 1015, 1018 (D. Mass. 1983); Leasing Serv. Corp. v. Graham, 646 F. Supp. 1410, 1415 (S.D.N.Y. 1986). Neither the plaintiffs position as a national leasing company, nor its supposed insistence on the forum selection clause at issue establish that the plaintiff exerted overweening bargaining power in contracting with an experienced businessman. LFC Lessors, Inc. v. Pearson, 585 F. Supp. 1362, 1364 (D. Mass. 1984).
The location of the defendants’ witnesses in Texas and any economic hardship attending Angerman’s joining suit in this Commonwealth are factors insufficient to render the parties’ choice of forum unenforceable in this case. See Mercury Coal & Coke, Inc. v. Mannesmann Pipe & Steel Corp., 696 F.2d 315, 318 (4th Cir. 1982); Moretti & Perlow Law Offices v. Aleet Assoc., 668 F. Supp. 103, 107 (D.R.I. 1987). Economic or geographical inconvenience was a foreseeable consequence of litigation in another state which must be deemed to have been contemplated by the parties in executing the lease agreement. First Interstate Leasing Serv. v. Sagge, 697 F. Supp. 714, 747 (S.D.N.Y. 1988). See also, M/S Bremen, supra at 16-17, 92 S. Ct. at 1916-1917.
In short, the forum selection clause in the parties’ lease agreement was not the *114 product of overweening bargaining power or other inequity which would render its enforcement unreasonable or improper in the circumstances of this case. Such enforcement would violate no strong public policy in Massachusetts against choice of forum provisions, and would promote contractual certainty and uniformity in the handling of commercial transactions whose multi-state or international scope was not envisioned by the parochialism oiNute and nineteenth century law. Enforcement of the forum selection clause in this case also serves established “concepts of freedom of contract,” Heller Financial, Inc. v. Nutra Food, Inc., supra at 1434, which dictate that it is unreasonable to permit parties to disregard their contractual promises. A. V. C Nederland B. V. v. Atrium Invest. Partner., 740 F.2d 148 (2d Cir. 1984).
Accordingly, the trial court’s allowance of the defendants’ motion to dismiss, predicated on immaterial considerations of jurisdictional minimum contacts, is reversed.[7] The case is returned to the Waltham Division for a trial on the merits.
So ordered.

 The written guaranty signed by defendant Angerman does not contain the same forum selection clause. Neither party has referred to this difference in the contracts, or raised it as an issue in written or oral arguments to this Division. Presumably, the irrelevance of this point stems from the fact that the liabilities of defendant The YWeekly, an unincorporated business operated by its publisher, Angerman, are those of Angerman, who signed the lease agreement on beh alf of The Y Weekly.

 Also central to the Nashua River Paper Co. Court’s adherence to Nute was its then continuing status as “a general principle which has been adopted and prevails in all federal courts by reason of the binding decisions of the United States Supreme Court.... The same rule prevails generally in all States where the question has arisen. It relates to a matter as to which uniformity of decision and harmony of law among the several jurisdictions of this country is desirable. It would be unfortunate if contracts touching a subject of general commercial interest and which may be broadly operative as to jurisdiction, should be held valid in one State and invalid in all others.” Id. at 19. As noted, Nute now represents a minority view inconsistent with the modem rule recognizing the validity of forum selection clauses which has been adopted by federal and most state courts.

 In Mittenthal, a contract clause executed in Italy by Italian nationals which granted exclusive jurisdiction to Italian courts was upheld as “reasonable.” See also, Daley v. People's Bldg., Loan & Sav. Assoc., 178 Mass. 15 (1901), in which a clause in a Massachusetts plaintiff-shareholder’s membership certificate requiring any action against the defendant-association to be brought in New York courts was upheld as a valid condition under New York law, reasonably imposed by the defendant, a New York corporation with the majority of its members, contracts and transactions in New York.

 See Diversified Mortg. Inv. v. Viking Gen. Corp., 16 Mass. App. Ct. 142 (1983), wherein Florida corporate defendant’s contractual consent to suit in Massachusetts justified plaintiff’s Massachusetts action; and Maxwell Shapiro Woolen Co. v. Amerotron, 339 Mass. 252, 256-258 (1989), reiterating established Massachusetts recognition of the validity of arbitration contract clauses which include consent to the jurisdiction of foreign courts.
Section23Aof G.Lc. 235 states: “Aforeign judgment shall not be refused recognition for lack of personaljurisdiction if... (3) the defendant prior to the commencement of the proceedings had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved....”

 The Supreme Judicial Court last cited Nute in Cadillac Auto. Co. of Boston v. Engeian, 339 Mass. 26, (1959), stating: “Generally, our decisions have held that contract clauses limiting the forum within which suit must be brought are unenforceable.... Some decisions, however, have held such clauses to be valid.... We do not intimate what our decision would be were the validity of this clause before us.” Id. at 30.

 Contrary to the defendants’ misstatement of Burger King v. Rudzewicz, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985), jurisdiction may indeed be conferred by consent M/S Bremen, supra, at 10-11, 92 S. Ct. at 1913; National Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315-318, 84 S. Ct. 411, 414, 11 L. Ed. 2d 354 (1964); Samincorp So. Amer. Min. & Merck. Corp. v. Lewis, 337 Mass. 298, 301 (1958), and such consent, set forth in a contractual forum selection clause, may constitute &e sole basis for the court’s exercise of personal jurisdiction over the parties. Burger King, supra, at 472, 105 S. Ct. at 2182, n.14. The Burger King analysis of “one contract” as an insufficient minimum contact with a forum state is applicable only where a party has not otherwise consented to the court’s jurisdiction and his minimum contacts with thatforum must be established to satisfy Due Process requirements.