Lauriat, J.
The plaintiff, James M. Connolly (“Connolly”), brought this action against his former employer, Rochester Shoe Tree Company, Inc. (“Rochester”), alleging breach of contract (Count I) and fraud (Count II) arising from Rochester’s denial of bonuses to Connolly during his employ. Connolly further asserts that his termination from the position as Rochester’s Vice President of Sales and Marketing constitutes age discrimination in violation of G.L.c. 15IB (Count III).[1] Rochester has now moved for summary judgment on each of these counts in the complaint. For the reasons which follow, the defendant’s motion is allowed.
BACKGROUND
Rochester, a Delaware corporation headquartered in New Hampshire, is primarily engaged in the business of manufacturing and marketing wooden shoe trees and other wood products. On April 23, 1988, Connolly and Rochester entered into a written employment contract. Pursuant to the employment contract, Connolly was hired as the Vice President of Sales and Marketing. The employment contract provided that Connolly would be paid a bonus of $ 15,000 in his first year at Rochester, and that, thereafter, any annual bonus would be “calculated and paid in accordance with standard operating procedure for the Company.” (Employment Contract, ¶4.) The employment contract further provided that the courts of the state of New Hampshire “shall be the exclusive forum for any actions brought pursuant to this Agreement.” (Employment Contract, ¶12.)
Connolly received a $17,000 bonus from Rochester for fiscal year 1989 and a $37,000 bonus for fiscal year 1990. Connolly alleges that Amin Khoury (“Khoury”), the Chairman of Rochester’s Board of Directors, orally promised to pay Connolly a $50,000 bonus for fiscal year 1991 “barring some disaster.” (Exh. A to Aff. of Joshua Levy, Connolly Dep., p. 78.) During the middle of fiscal year 1992, Paul Marshall (“Marshall”) was named the new Chairman and Chief Executive Officer of Rochester. Connolly ultimately received a $35,000 bonus for fiscal year 1991, instead of the $50,000 bonus allegedly promised. In his deposition, Connolly testified that Khoury intended to keep the promise when he made it, but that Marshall reneged. (Exh. A to Aff. of Joshua Levy, Connolly Dep., p. 106.) Rochester contends that it was unable to pay Connolly the $50,000 bonus in fiscal year 1991, due to its precarious financial situation.[2]
In a March 12, 1992 meeting, Marshall informed Connolly that he was being laid off and that he would be employed by Rochester for only three to four more months. On May 26, 1992, Rochester’s Board of Directors officially accepted Connolly’s resignation from the company, effective June 30, 1992. On December 30, 1992, Connolly filed a claim of age discrimination with the Massachusetts Commission Against Discrimination (“MCAD”). In his present complaint, Connolly asserts that Marshall “stated on more than one occasion that he preferred to have young men in management positions, due to their high energy levels.” (Complaint ¶38, emphasis in original.) Connolly further asserts that Marshall occasionally referred to Harvard Business School students and at least one salesman as “young turks” and “young tigers.” (Exh. A to Aff. of Joshua Levy, Connolly Dep., p. 150-51.) Connolly finally contends that, early in his tenure, Marshall began grooming Jay Conley, who was ten years younger than Connolly, for Connolly’s job. (Aff. of James M. Connolly, ¶¶10 and 11).
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matteroflaw. Cassessov. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, *33 “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
I.
Rochester contends that this court lacks jurisdiction over Connolly’s breach of contract claim because the employment contract contains a forum selection clause which grants the New Hampshire courts exclusive jurisdiction over “any actions brought pursuant to this Agreement.” (Employment Contract, ¶12.) Connolly asserts that because the Commonwealth has not unequivocally accepted the validity of forum selection clauses, this court should not enforce the forum selection clause in the employment contract.[3]
The prevailing view adopted by the federal courts and most state courts is to enforce forum selection clauses. See Lambert v. Kysar, 983 F.2d 1110, 1118-19 (1st Cir. 1993). Similarly, in Massachusetts, while not expressly decided, it is clear that the cases generally support such clauses. See W.R. Grace & Co. v. Hartford Accident & Indemnity Co., 407 Mass. 572, 582 n.13 (1990) (“We see nothing inherently inappropriate in a forum-selection clause”); Morris v. Watsco, Inc., 385 Mass. 672, 674-75 (1982) (“[T]his court has similarly acknowledged and given effect to the law reasonably chosen by the parties to govern their rights under contracts”); Ernest & Norman Hart Brothers, Inc. v. Town Contractors, Inc., 18 Mass.App.Ct. 60, 65 (1984) (“In the light of present day trends, attorneys advising clients would be unwise to rely on the persistence of the Nute principle in future Massachusetts cases where the parties purport to bind themselves by a contractual choice of forum provision and no special circumstances make it unjust to enforce the parties’ agreement”). Because the court concludes that there are no special circumstances which would render moving this case to New Hampshire unjust or unfair, Rochester is properly entitled to a dismissal of Count I (Breach of Contract) of the complaint for lack of jurisdiction.
II.
Connolly contends that Khoury fraudulently represented that he would receive a $50,000 bonus in fiscal year 1991 and that Connolly relied on this representation to his detriment. The burden of proving fraud by a preponderance of the evidence rests on the party alleging it. see Cereghino v. Giannone, 247 Mass. 319 (1924). “To sustain a claim of misrepresentation, a plaintiff must show a false statement of a material fact made to induce the plaintiff to act, together with reliance on the false statement by the plaintiff to the plaintiffs detriment.” Zimmerman v. Kent, 31 Mass.App.Ct. 72, 77 (1991) (citations omitted). Therefore, to recover on his claim of fraud, Connolly must establish that Khoury falsely represented his intention to pay Connolly a $50,000 bonus in order to induce Connolly to continue his employ with Rochester.
In his deposition, Connolly testified that Khoury intended to fulfill his commitment to pay Connolly a bonus for fiscal year 1991 at the time he made the promise. (Exh. AtoAff. of Joshua Levy, Connolly Dep., p. 106-07). Moreover, Khoury, in his affidavit, stated that it was his intent to pay Connolly a bonus of $50,000 for each of the fiscal years 1991 and 1992 provided that Rochester was “financially in a position to pay a bonus of this magnitude.” (Aff. of Amin Khoury, ¶12.) The submissions therefore indicate that Khoury did not intend to defraud Connolly at the time the alleged promises were made, but rather that disastrous financial circumstances led Khoury to abandon his alleged promise to pay Connolly a $50,000 bonus. Thus, because Connolly has not established that Khoury’s statements were false at the time they were made, Rochester is properly entitled to summary judgment on Count II (Fraud) of the complaint.
III.
Connolly contends that his termination from Rochester constituted age discrimination violative of G.L.c. 151B. To pursue a G.L.c. 151B action in Superior Court, a plaintiff must have previously filed a complaint with MCAD within six months of the alleged act of discrimination. G.L.c. 151B, §§5 and 9. “The statutory period for complaining of a discriminatory termination does not begin to rim until the employee has sufficient notice of that specific act.” Wheatley v. American Telephone & Telegraph Co., 418 Mass. 394, 398 (1994), quoting McConnell v. General Tel. Co. of Cal., 814F.2d 1311,1317 (9th Cir. 1987), cert, denied, 484 U.S. 1059 (1988). By his own admission, Connolly was first placed on notice that he would be discharged when Marshall informed him of his dismissal at a meeting on March 12, 1992. On May 26, 1992, Rochester’s Board of Directors officially accepted Connolly’s resignation from the company. Even assuming arguendo that Connolly did not have sufficient notice of Rochester’s allegedly discriminatory act until the date of his resignation, Connolly still failed to file a timely complaint with MCAD.[4]
Connolly contends, however, that the statute of limitations should have been tolled until his effective date of termination, June 30, 1992, because after being notified of his termination, Connolly and Marshall discussed the possibility that Connolly might become an independent sales representative for Rochester. Connolly relies on Wheatley v. American Tel. & Tel. Co., 418 Mass. 394, 398 (1994). In Wheatley, the Supreme Judicial Court held that the statute of limitations applicable to G.L.c. 151B did not begin to run where the initial notice to the plaintiff “held out the possibility of other employment within the company.” Wheatley, supra at 398 (emphasis added). In the instant case, the evidence is uncontraverted that Rochester never offered Connolly the possibility of other employment within the company nor did the parties reach any independent sales representative *34 agreement.[5] Thus, the court concludes that Wheatley is not applicable to toll the statute of limitations of G.L.c. 151B. Rochester is therefore entitled to summary judgment on Count III (Age Discrimination in Violation of G.L.c. 15 IB) of the complaint.
ORDER
For the foregoing reasons, the defendant Rochester Shoe Tree Company, Inc.’s Motion for Summary Judgment is ALLOWED.

 Connolly has agreed to withdraw Count IV (Wrongful Termination of Employment) and Count V (Violation of G.L.c. 93A) from his complaint.

In fiscal year 1992, Rochester suffered a net loss of approximately $1.4 million on total sales of $11.6 million. Rochester’s cumulative losses during fiscal years 1989 through 1992 amounted to over $5.7 million.

Connolly relies on Nute v. Hamilton Mut. Ins. Co., 6 Gray 174, 182-85 (1856), and its progeny.

Connolly did not file his claim with MCAD until December 30, 1992.

Furthermore, the record indicates that Connolly proposed the possibility of an independent sales representative arrangement rather than Marshall. (Aff. of Joshua Levy, Exh. 7 of Connolly Dep.)