Merrick, P.J.
Plaintiff Leasecomm Corp. (“Leasecomm”) is a Massachusetts corporation engaged nationally in the business of financing the procurement of business equipment by small businesses by utilizing the device of a finance lease. The financing typically is for relatively small acquisitions such as credit card processing machines. Leasecomm enters into thousands of such contracts annually. Given the nature and size of the lessors and the transactions involved, a principal part of Leasecomm’s activity is collections. Pursuant to a forum selection clause in its standard form financing leases Leasecomm brings nearly all of its collection actions, hundreds per year, in Middlesex County, Massachusetts.[3] A large percentage of those suits result in default judgments.
Leasecomm deals with a number of suppliers who are provided with its standard form finance leases. When a sale is made to a customer who cannot or does not wish to pay cash, the supplier’s salesman offers to submit a financing lease to Leasecomm for approval. The salesman fills out the lease, the customer signs it, and the salesman submits it to Leasecomm for approval of the customer’s credit. If the credit is approved, Leasecomm signs and returns a copy of the lease and pays the purchase price to the supplier, who then delivers the equipment to the lessee.
In June of 2001, defendant Tom Crawford (“Crawford”), owner of defendant O’Loughlin’s Restaurant, Inc. (“O’Loughlin’s”) in Arnold, Maryland, was contacted by a salesman from “ECP” (the “supplier”) about acquiring credit card pro *59 cessing equipment. The supplier not only promised to furnish the equipment, but also to install it, to train O’Loughlin’s staff in its use and to have the system operational in five weeks. As a method of financing the acquisition, O’Loughlin’s entered into a lease of two pieces of credit card processing equipment, including one which would produce in-store “gift cards.” Crawford signed as guarantor. The lease was completed by the supplier’s salesman on a form supplied by Leasec-omm. The lease describes the equipment by model and serial number and provides for 48 payments of $199.98. The lease also includes a ‘"Vendor’s Bill of Sale” conveying the equipment from the supplier to Leasecomm. The lease was submitted to Leasecomm in Massachusetts, and Leasecomm approved, signed and returned the lease and payment of the purchase price to the supplier.
The lease states that the equipment leased is for “business and/or professional purposes and this lease is not a consumer contract.” It covers property selected by the lessee to be purchased from the supplier by the lessor. In large, bold print just above the signature line, the lease states:
AGENCY DISCLAIMER - NEITHER SUPPLIER NOR ANY SALES PERSON IS AN AGENT OF LESSOR NOR ARE THEY AUTHORIZED TO WAIVE OR ALTER THE TERMS OF THIS LEASE. THEIR REPRESENTATIONS SHALL IN NO WAY AFFECT LESSEE OR LESSOR’S RIGHTS AND OBLIGATIONS AS HEREIN SET FORTH.
The lease further recites in various ways that Leasecomm makes no warranties and that lease payments will be due regardless of any failure of equipment or service. It also states in bold, underlined print:
I acknowledge that you are a ‘finance lessor’ as that term is defined in UCC Article 2A and not a manufacturer, distributor, agent or reseller. Your only role was to secure lease financing.
Finally, the lease includes the forum selection clause which provides, also in bold, underlined print:
The parties hereby agree that this Agreement is made in, governed by, to be performed in, and shall be construed in accordance with the laws of the Commonwealth of Massachusetts. They further consent and submit to the jurisdiction of the Courts of the Commonwealth of Massachusetts and expressly agree to such exclusive forum for the bringing of any suit, action or other proceeding arising out of their obligations hereunder and expressly waive any objection to venue in such Courts and waive any right to a trial by jury so that trial shall be by and only to the Court. It is further agreed and understood that the corporate headquarters of Leasecomm Corporation is located within the venue of the District Court Department of the Trial Court within Middlesex County.
After the lease was executed, the equipment was delivered. No cards for the equipment were provided, however, for 11 weeks, six weeks after the supplier had promised that the system would be operational. The supplier also failed to train O’Loughlin’s staff and, in fact, never even assigned an account representative. O’Loughlin’s made five monthly payments and defaulted thereafter. O’Loughlin’s returned the equipment, but Leasecomm would not cancel the lease.
Leasecomm commenced this action in the Cambridge Division of the District Court Department against Crawford and O’Loughlin’s to recover unpaid lease payments. The defendants filed a Mass. R. Civ. R, Rule 12(b) (2), motion to dismiss on the ground of lack of personal jurisdiction or, alternatively, on the ground of forum non conveniens. The defendants asserted by affidavit that Crawford and several *60 employees who heard misrepresentations by the supplier’s salesman will not be able to testify at a trial in Massachusetts due to the prohibitive cost in time and money that would be involved.
The trial court allowed the defendants’ motion to dismiss, and Leasecomm filed this Dist./Mun. Cts. R. A. D. A., Rule 8A, appeal of that order.
The motion judge ruled that Crawford and O’Loughlin’s were not “transacting any business in the commonwealth” within the meaning of G.L.c. 223A §3, the Massachusetts ‘long-arm” statute. Where a party seeks to bring an action in Massachusetts under the long arm statute against a non-resident party to a contract, it is the plaintiff who has the burden of showing “certain minimum contacts with [Massachusetts] such that the maintenance of the suit does not offend ‘traditional notions of fair play and substantial justice.’” Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 152 (1978), citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Where a plaintiff seeks to establish personal jurisdiction over a nonresident defendant who has not agreed to it by contract, the plaintiff must prove “some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.” Id. at 153, citing Hanson v. Denckla, 357 U.S. 235, 253 (1958). “[T]he effect of a nonresident’s activity on the commerce of the Commonwealth is still an important factor to be considered in deciding the sufficiency of contacts with Massachusetts.” Id. at 154 n.5.
Where the parties have agreed upon personal jurisdiction by a forum selection clause, however, the burden is on the defendant, not the plaintiff. “[I]t should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court” Kirby v. Miami Systems Corp., 1999 Mass. App. Div. 197, 200, quoting The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 18 (1972). A forum selection clause will be enforced by Massachusetts courts “if it is fair and reasonable to do so .’’ Jacobson v. Mailboxes Etc. U.S.A., Inc., 419 Mass. 572, 575 (1995).
As we stated in Graphics Leasing Corp. v. The Y Weekly, 1991 Mass. App. Div. 110:
The Bremen rule, cited with approval by the Supreme Judicial Court, imposes ‘a heavy burden of proof’ [citation omitted] upon the party resisting enforcement of a forum selection clause to establish that its enforcement under the circumstances of the case is clearly unreasonable because of fraud, undue influence, overweening bargaining power or such serious inconvenience in litigating in the selected forum that the defendant is effectively deprived of his day in court.
Id. at 113. We emphasize that economic hardship or geographical inconvenience are considered to have been contemplated by the parties when they entered into the contract with a forum selection clause and are not generally a reason to disregard a forum selection clause. New England Technical Sales, Inc. v. SEEQ Technology, Inc., 1996 Mass. App. Div 191, 194; Graphics Leasing Corp., supra at 113. It does not render enforcement other than “fair and reasonable” that
the forum selection clause at issue was a boilerplate provision of a standard lease form not specifically negotiated by the defendants who were in a bargaining position inferior to the plaintiff’s, that all of their witnesses are in [Maryland] and that defendant... would suffer ’severe economic hardship and logistical disadvantage’ if compelled to defend against this suit.

Id.

Although the trial judge’s memorandum of decision did not discuss the defendants’ claim of forum non conveniens, we will consider that claim as an alternate basis for dismissing the suit. A forum selection clause does not necessarily oust a *61 court of its discretion in appropriate circumstances to dismiss a case on grounds of forum non conveniens. “Because the doctrine of forum non conveniens is designed to serve the interests of the public as well as interests of litigants, a private agreement between parties cannot preclude consideration of the public interest component of that doctrine.” W.R. Grace & Co. v. Hartford Accident and Indemnity Co., 407 Mass. 572, 581 (1990).
Analysis of the propriety of a dismissal on grounds of forum non conveniens first requires consideration of Leasecomm’s role as lessor in the transaction at issue. “Commentators have categorized equipment lessors as merchant-lessors, who deal in goods and hold themselves out as having specialized knowledge about the design, operation and repair of the chattel leased, and finance-lessors, whose service is to provide funds and who are not merchants.” Patriot General Life Ins. Co. v. CFC Investment Co., 11 Mass. App. Ct. 857, 860-861 (1981). Leasecomm did not select, recommend or supply the equipment which was the subject of the lease. It provided only the funds for the acquisition. In the present case then, Leasecomm was a finance-lessor.
When the commercial context has been, as here, a financing lease, the weight of authority is that the consideration which flows from the financing lessor is money, not a functioning product. Accordingly, a breach by the supplier of the equipment does not excuse the lessee from making lease payments to the finance-lessor, unless the equipment lease otherwise provides. Where, as in many lease documents with a finance-lessor (and in the instant case), there is an express disclaimer of liability for malfunctioning equipment, the position of the finance-lessor is that much stronger.
Id. at 862-863.
Leasecomm, therefore, is not subject to defenses arising out of misrepresentations by the supplier. Leasecomm Corp. v. Collesano, 1994 Mass. App. Div. 126, 127-128.
The determination that a matter should in the interests of justice be heard in another forum requires a careful balancing of the private interests of the litigants with matters of public concern, [citations omitted] The general rule is that ‘unless the balance is strongly in favor of the defendant, the plaintiffs choice of forum should rarely be disturbed.’
Id. at 127, citing Kearsage Metallurgical Corp. v. Peerless Ins. Co., 383 Mass. 162, 169 (1981). It is not necessary for us to consider those public and private factors typically applied to a forum non conveniens analysis. Neither Mr. Crawford, nor any of the defendants’ other witnesses, can testify to defenses which could be raised against Leasecomm, as opposed to the supplier, and there is thus no basis to have the case tried elsewhere to accommodate those witnesses. See Leasecomm Corp. v. Collesano, supra at 127-128; Leasecomm Corp. v. Rivera, 1994 Mass. App. Div. 115, 116-117.
The allowance of the defendants’ motion to dismiss is reversed, and the judgment entered in favor of the defendants is vacated.
So ordered.

 Leasecomm files some collection actions in other states. Whether or not that is because judges in those states will not accept default judgments from Massachusetts wherein jurisdiction is based upon the forum selection clause or for some other reason, Leasecomm is not thereby estopped from relying upon the forum selection clause in other cases.