[No. 31695. Department Two. July 12, 1951.]

EXCELSIOR KNITTING MILLS, INC., *Appellant*, v. KENNETH S. BUSH *et al., Respondents.*[1]

*Harrison M. Berkey,* for appellant.

*J. Orville Humphries* and *Arthur E. Florer,* for respondents.

MALLERY, J.—The plaintiff sued for the purchase price of shirts manufactured and shipped to the defendant, which

[1]Reported in 233 P. (2d) 847.

he refused to accept. From a judgment in favor of the defendant, the plaintiff appeals.

The question presented to us is whether or not there was a contract for the purchase of the goods in question.

■ This depends upon the legal significance of the written instruments introduced in evidence. The first instrument is dated August 15, 1949, and is in the form of a tentative order for twelve items of merchandise to be manufactured by the appellant. These items were listed under "Mill Style" numbers, and each call for one hundred dozen shirts of a particular style. This instrument bore upon its face the notation, "This order will be confirmed upon receipt of road samples." The printed form, which was supplied by the western representative of the appellant, contained on its face the printed provision, "This order is taken subject to acceptance by Mill." Since it is not an unqualified offer or acceptance by either party, it is not a contract. It constitutes a preliminary negotiation only.

The next instrument is dated September 13, 1949, and is a carbon copy of appellant's invoice or bill of lading, indicating that the road samples, referred to in the preceding instrument, had been expressed to the respondent. The record is inconclusive as to whether or not the respondent received the road samples, but we may assume that he did.

On December 10, 1949, a letter was sent from the appellant to the respondent, in which the appellant informs the respondent of the receipt of a letter from its western representative and concludes with the words,

"We have, therefore, placed this order in work in accordance with the above mentioned letter and will ask you to accordingly confirm this order."

■ This instrument may be treated as an offer, but, in its request for confirmation, it recognizes that the first instrument had not yet been confirmed by the respondent so as to ripen into a contract. The appellant, in placing the order "in work," took a calculated risk of securing respondent's acceptance of its offer by confirmation of the order.

The next instrument, dated December 19, 1949, is a letter from the appellant to the respondent, in which appellant said it had not received a reply to its letter of December 10, 1949, and asked again for immediate attention. It also asked respondent to send sufficient hangers and labels to cover the order.

On January 17, 1950, a letter was sent from appellant to the respondent, in which it is said that the appellant had just spoken on the phone with its western representative, who was surprised that the confirmation of the contract had not been received. The letter continued:

"No doubt that this confirmation was lost in the mail and we would appreciate your sending us one on receipt of this letter as we would like to have same for our file."

The respondent at no time ever confirmed the order. The appellant, however, acted upon the assumption that there was a confirmation that had been lost in the mail, and hence, that there was a contract between the parties.

There were a number of items shipped by the appellant, which were received and paid for by the respondent. As to them there is no controversy. We are concerned only with the goods shipped and refused by respondent for which appellant asserts a contractual right to the purchase price.

The appellant assigns as error the dismissal of its action, and that

"The court erred in holding that there were several contracts for the purchase of merchandise involved, instead of one, only."

The appellant contends

". . . that the order was an offer of the appellant to manufacture and ship the merchandise; that the respondents confirmed and accepted the order by their letter of January 21st, 1950, and the answering letter of appellant of January 24th, confirmed the respondents' letter of acceptance with the cancellation of four styles. The fact that four style numbers of the original order were cancelled by the respondents did not prevent the meeting of the minds of the parties in reference to the remaining goods covered by the original order. Furthermore both parties subsequently treated the contract as existing; on the part of the appellant

by manufacturing and shipping of the goods, and on the part of the respondents by accepting part of the goods and paying for them.

"The Courts have held that where the offeree, in accepting the order, requests minor changes and the offerer either agrees to the changes, or by his conduct later on, in complying with the offeree's request sends the goods, the parties by their conduct have accepted the contract with the changes as suggested by the offeree."

■ With appellant's rule of law and citations we can agree. It means that a qualified acceptance is in effect a counteroffer which can be accepted by the original offeror. If there has been a valid contract, offers and counteroffers to modify the contract follow the same pattern.

■ The parties acted upon the assumption that there was a contract between them. However, they never agreed upon what the contract was. We set out the pertinent part of respondent's letter of January 21, 1950, and appellant's reply of January 24, 1950, upon which appellant relies to establish the contract.

On January 21, 1950, respondent wrote to appellant as follows:

"There seems to be an unusual amount of controversy over our order for Sport Shirts, as previously advised you by letter and as reported to Mr. Al Brill, the numbers that we requested cancellation were the two Goucho styles 6949 and 6937, as well as Style No. 6958, which was a dark back ground number. These were the original strike-outs from our order, and these three numbers were never sampled; however, if you have not progressed too far with the detail of the order, we would also like to ask that you strike Style Nos. 6960 and 6934. These are both $14.50 numbers and the trade at large is shying away from merchandise in this price category. As a matter of fact, a recap of our orders reveals that we have not sold any of these two numbers to speak of. We would much prefer to review the situation a little later on, and add to the less expensive styles. Will you please advise us in this matter?"

Even if we accept this as a counteroffer, as appellant asks us to do, we find no acceptance of it by the appellant in his reply, which is as follows:

"Replying to your letter of even date, we have been corresponding with you on your order since Dec. 10th and we trust that we will finally be able to straighten you out.

"We wrote you we were cancelling style 6937 and that we were placing the balance of your numbers in the process of work as instructed by Mr. Brill. We received no reply to our letter of the 10th nor to our second letter of Dec. 19th. We, therefore, proceeded with your order accordingly.

"Your letter of today requests cancellation of style 6958. *We are sorry that we cannot accommodate you in this instance as these goods are made for you and are ready for shipment.*

"We note further that you request cancellation on Nos. 6934, 6949 and 6960. While most of these numbers have been put in work we can convert them elsewhere and will cancel them in addition to style 6937 which was previously cancelled.

"Regarding hangers, we do not use any hangers other than those supplied by our customers. Where no hangers are specified we ship them ommitting hangers as we will do in this instance.

"Regretting that we have had so much correspondence and misunderstanding regarding your order and assuring you that we will do everything to cooperate with you, we beg to remain, . . ."

Subsequent to the exchange of the above letters, the relation between the parties deteriorated. We will not set out verbatim any later correspondence, since the appellant does not rely upon it to prove a meeting of the minds. It shows that the respondent tried to cancel as to the goods in question which the appellant shipped. Upon their arrival, respondent refused to accept them.

We think this is a case where both parties made tentative offers and both parties acted without confirmation of the other party. That some goods were shipped, received, and paid for, throws no light on the existence or absence of a contract with regard to the other items refused.

We think the trial court was correct in finding that there was no contract as to the goods refused.

The judgment is affirmed.

SCHWELLENBACH, C. J., GRADY, HAMLEY, and WEAVER, JJ., concur.