[No. 36106.    Department One.    February 28, 1963.]

BERTHA I. BANKS, *Respondent,* v. CRESCENT LUMBER & SHINGLE Co., *Appellant.**

. *Reported in 379 P. (2d) 203.

*Graham, Green, Dunn, Johnston & Rosenquist, William R. Smith,* and *James Wm. Johnston,* for appellant.

*Richard D. Harris,* for respondent.

WEAVER, J.—Plaintiff's assignor is a British Columbia lumber mill. We refer to the mill as plaintiff. Defendant is a lumber broker with its office in Seattle.

Over a 3-week period, defendant executed in triplicate and mailed to plaintiff 67 orders for carload shipments of lumber from plaintiff's mill in British Columbia to the middle west and eastern sections of the United States. The purchase orders were numbered separately; they specified grade, size, length, finish, and price, which varied in each order. The orders stated: "Terms 2% usual." The sales manager of plaintiff's assignor testified this meant "90% on receipt of the invoice, 2%, thirty days." Each order was a separate transaction.

Upon receipt of the orders, plaintiff changed them in several respects, marked a copy of them "accepted," and returned the copy to defendant. Plaintiff marked copies of the orders "Full Payment 21 days."

Plaintiff shipped 54 railroad cars of lumber and defendant accepted by selling them to others. Defendant paid for 34 carloads in accordance with the purchase orders *as modified by plaintiff.* They are not involved in this litigation.

Defendant paid for 20 carloads of lumber *as provided in its original orders*—not as the orders were changed and

"accepted" by plaintiff. Plaintiff's second cause of action is based upon this difference. The trial court found in plaintiff's favor for $438.93.

Subsequently, the lumber market declined. May 27, 1959, defendant wrote plaintiff:

". . . We therefore must ask that you suspend all shipments until further notice . . . We recognize that this may be inconvenient for you and you may cancel the [13] remaining orders if you wish. If that is not your choice, *we can discuss the balance of the orders* just as soon as the current situation is cleared up . . ." (Italics ours.)

July 6, 1959, defendant wrote plaintiff:

"When you were in Seattle last month you mentioned to the writer that you had sold the unshipped stock elsewhere when we asked you to hold up the shipment until we could move some of our transit cars. In view of this we will consider the remaining orders canceled."

Plaintiff's first cause of action is based upon the alleged breach of the 13 contracts of purchase. The trial court found the difference ". . . between the contract price and the eventual sale price, due to a declining lumber market . . ." to be $2,510.04.

Defendant appeals from a judgment against it for $438.93 based upon plaintiff's second cause of action, and for $2,510.04 based upon plaintiff's first cause of action.

■ Applicable to both causes of action is *Owens-Corning Fiberglas Corp. v. Fox Smith Sheet Metal Co.*, 56 Wn. (2d) 167, 170, 351 P. (2d) 516 (1960) wherein this court said:

"An acceptance of an offer must always be identical with the terms of the offer or there is no meeting of the minds and no contract. *Blue Mountain Constr. Co. v. Grant County School Dist.*, 49 Wn. (2d) 685, 306 P. (2d) 209 (1957); *Ferris v. Blumhardt*, 48 Wn. (2d) 395, 293 P. (2d) 935 (1956). . . ."

Defendant's offers to purchase lumber were not accepted by plaintiff. The terms of the offers were changed, thus becoming counteroffers to sell upon plaintiff's terms. *Bond*

*v. Wiegardt,* 36 Wn. (2d) 41, 216 P. (2d) 196 (1950); 1 Corbin, Contracts § 89.

The judgment for plaintiff for $438.93, based upon the second cause of action must be affirmed.

■ Defendant's exercise of dominion over the subject-matter by the sale of the 20 carloads of lumber to others is an unambiguous acceptance of the terms of plaintiff's counteroffer.

In Restatement, Contracts § 72, it is stated:

"(2) Where the offeree exercises dominion over things which are offered to him, such exercise of dominion in the absence of other circumstances showing a contrary intention is an acceptance. . . ."

In the comment on this section (Comment b.), it is stated:

"The duty that is imposed on the offeree . . . is not a quasi contractual duty to pay a fair value, but a duty to pay or perform according to the terms of the offer."

"Frequently, services are rendered under circumstances such that the party benefited thereby knows the terms on which they are being offered. If he receives the benefit of the services in silence, when he had a reasonable opportunity to express his rejection of the offer, he is assenting to the terms proposed and thus accepts the offer." 1 Corbin, Contracts § 75.

The 13 unfilled orders that were not shipped by plaintiff present the same general problem: Did defendant accept plaintiff's counteroffers? We think not.

■ The acceptance by defendant of previous orders did not constitute an acceptance of the 13 orders in dispute; for, as the court said in *Excelsior Knitting Mills v. Bush,* 38 Wn. (2d) 876, 233 P. (2d) 847 (1951):

"We think this is a case where both parties made tentative offers and both parties acted without confirmation of the other party. *That some goods were shipped, received, and paid for, throws no light on the existence or absence of a contract with regard to the other items refused.*" (Italics ours.)

■ Nor do we believe that defendant's letters of May 27, and July 6, 1959, quoted *supra,* constitute an unconditional acceptance of plaintiff's counteroffers. The most

that can be said for them is that they might be construed as a conditional acceptance; but, as this court pointed out in *Bond v. Wiegardt, supra* (p. 49), ". . . conditional acceptances are counteroffers and reject the original offer. 1 Williston on Contracts (Rev. ed.) 222, § 77; *Bridge v. Calhoun, Denny & Ewing,* 57 Wash. 272, 106 Pac. 762." This conclusion is fortified by defendant's statement that ". . . we can discuss the balance of the orders just as soon as the current situation is cleared up . . ."

As this court said in *Excelsior, supra,*

"The parties acted upon the assumption that there was a contract between them. However, *they never agreed upon what the contract was.* . . ." (Italics ours.)

In summary:

The judgment for $2,510.04, based upon plaintiff's first cause of action, is reversed. The judgment for $438.93, based upon plaintiff's second cause of action, is affirmed.

Each party shall bear his own costs on appeal. Rule on Appeal 55(b)(1), RCW Vol. 0.

Hill, Finley, and Rosellini, JJ., concur.