USCA1 Opinion

 

 March 12, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT No. 91-2244 GEORGE LAMBERT, d/b/a RAINBOW FRUIT, Plaintiff, Appellant, v. SAM KYSAR AND JOAN KYSAR, d/b/a LEWIS RIVER TREE FARM, Defendants, Appellees. _____________________ No. 92-1029 GEORGE LAMBERT, d/b/a RAINBOW FRUIT, Plaintiff, Appellant, v. SAM KYSAR AND JOAN KYSAR, d/b/a LEWIS RIVER TREE FARM, Defendants, Appellees. _____________________ ERRATA SHEET The opinion of this Court issued on January 13, 1993, is amended as follows: Cover sheet: Spelling of last name of appellant's counsel should be "Gillis"; Page 9, line 7: change "1988" to "1989"; Page 14, line 4: change "1988" to "1989." January 13, 1993 January 13, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ ____________________ No. 91-2244 No. 91-2244 GEORGE LAMBERT, d/b/a RAINBOW FRUIT, GEORGE LAMBERT, d/b/a RAINBOW FRUIT, Plaintiff, Appellant, Plaintiff, Appellant, v. v. SAM KYSAR AND JOAN KYSAR, SAM KYSAR AND JOAN KYSAR, d/b/a LEWIS RIVER TREE FARM, d/b/a LEWIS RIVER TREE FARM, Defendants, Appellees. Defendants, Appellees. _____________________ _____________________ No. 92-1029 No. 92-1029 GEORGE LAMBERT, d/b/a RAINBOW FRUIT, GEORGE LAMBERT, d/b/a RAINBOW FRUIT, Plaintiff, Appellant, Plaintiff, Appellant, v. v. SAM KYSAR AND JOAN KYSAR, SAM KYSAR AND JOAN KYSAR, d/b/a LEWIS RIVER TREE FARM, d/b/a LEWIS RIVER TREE FARM, Defendants, Appellees. Defendants, Appellees. _____________________ _____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge] [Hon. Edward F. Harrington, U.S. District Judge] ___________________ ____________________ ____________________ Before Before Cyr, Circuit Judge, Cyr, Circuit Judge, _____________ Campbell, Senior Circuit Judge, Campbell, Senior Circuit Judge, ____________________ and Fust ,* District Judge. and Fust ,* District Judge. ______________ ____________________ ____________________ Brian A. Gillis with whom Parker, Coulter, Daley & White was on Brian A. Gillis with whom Parker, Coulter, Daley & White was on _______________ _______________________________ brief for appellant. brief for appellant. James A. G. Hamilton with whom Perkins, Smith & Cohen was on James A. G. Hamilton with whom Perkins, Smith & Cohen was on _____________________ _______________________ brief for appellees. brief for appellees. ____________________ ____________________ ____________________ ____________________ *Of the District of Puerto Rico, sitting by designation. *Of the District of Puerto Rico, sitting by designation. CYR, Circuit Judge. George Lambert appeals a district court CYR, Circuit Judge. _____________ order dismissing his lawsuit for improper venue. We affirm. I I BACKGROUND BACKGROUND __________ Appellant Lambert owns and operates the Rainbow Fruit Company in Boston, Massachusetts, which sells Christmas trees and wreaths at retail during the holiday season. Appellees Sam and Joan Kysar operate a Christmas tree farm in Woodland, Washington. From 1987 through 1989, Lambert purchased Christmas trees at wholesale from the Kysars pursuant to a written form contract signed by both parties. The front of the order form contained spaces in which the size, grade, quantity, and price of each Christmas tree order could be filled in; a small space at the bottom of the page, denominated "other", was used by the parties to note additional terms and conditions. The back of the order form stated the fixed terms of the contract and provided, inter alia, that _____ ____ "[t]he terms and conditions of the order documents applicable to this transaction shall be interpret- ed under the case and statutory law of the State of Washington. In the event any action is brought to enforce such terms and conditions, venue shall lie exclusively in Clark County, Washington." In July 1989, the Kysars visited Boston to discuss Lambert's needs for the upcoming Christmas season. On their return to Washing- ton, they sent Lambert an order form, filled out and signed by Joan 3 Kysar. The numbers handwritten on the form by Joan Kysar provided for an order of 2600 Christmas trees at $11.60 apiece. At the bottom of the form, in the space marked "other", Kysar wrote that the order was "[b]ased on 4 loads of 650 trees each. All trucks will be loaded to capacity. 25% deposit . . . balance due on or before 12/10/89." Lambert received the order form in late July, but apparently thought that it overstated the quantity of trees needed for the next season. Writing on the same order form submitted by the Kysars, he changed the notation "4 loads of 650 trees each," to read "3 loads of 550 trees", and changed the total number ordered from "2600" to "1650." Lambert also recomputed the total amount due and the amount of the required 25% deposit. He inserted the new figures over Joan Kysar's handwritten figures at the bottom of the form, and returned the form to the Kysars. He made no change to the $11.60 unit price or to any other contract provision. On August 21, 1989, in a letter to Sam and Jean Kysar, Lambert enclosed a $4785 check "for payment of the deposit on our tree order", and stated his understanding "that shipping will be the same as last year. There will be three loads of 1,650 trees at $11.60 for a total cost of $19,140." The record on appeal does not indicate whether the Kysars received Lambert's letter, cashed his deposit check, or issued any written response, but on November 20, 25 and 29, in accordance with the instructions on the altered order form, the Kysars sent Lambert the requested 1,650 trees, in three loads, by overland truck. Following delivery of the trees on November 25, 29, 4 and December 1, Lambert's inspection allegedly revealed that the trees "were dry, not fresh, and appeared old." Citing the allegedly defec- tive condition of the trees, Lambert refused to pay the balance claimed by the Kysars. In June, 1991, the Kysars filed suit in Clark County, Washington, to recover the balance claimed due. In September, 1991, Lambert filed the present countersuit against the Kysars in Massa- chusetts Superior Court, alleging misrepresentation, breach of con- tract, breach of implied warranty, and unfair business practices under Mass. Gen. L. ch. 93A. The Kysars removed Lambert's suit to federal district court and moved to dismiss under Federal Rules 12(b)(3) and 12(b)(6), alleging improper venue and failure to state a claim on which relief could be granted.1 On November 18, 1991, the motion to dismiss was granted without hearing, by margin order: "[The defendants'] motion to dismiss is allowed. According to the terms of contract[,] suit must be filed in State Court in Washington." We review the district court dismissal order de novo. See Edwards v. John Hancock Mut. Life Ins. __ ____ ___ _______ ____________________________ Co., 973 F.2d 1027, 1028 (1st Cir. 1992); see also Instrumentation ___ ___ ____ _______________ Assocs., Inc. v. Madsen Electronics (Canada) Ltd., 859 F.2d 4, 5 (3d _____________ ________________________________ ____________________ 1The Kysars invoked Rule 12(b)(3) as the procedural vehicle for urging dismissal under the forum selection clause in the order form. We have held that such dismissals are founded on Rule 12(b)(6), see LFC ___ ___ Lessors, Inc. v. Pacific Sewer Maintenance Corp., 739 F.2d 4, 7 (1st _____________ _______________________________ Cir. 1984). No matter, however, since "we are not bound by the label employed below, and we agree that the case should have been dis- missed." See id. (quoting Carr v. Learner, 547 F.2d 135, 137 (1st ___ ___ ____ _______ Cir. 1976)). 5 Cir. 1988) (de novo review of forum selection clause dismissal under __ ____ Rule 12(b)(6)); compare, e.g., Pelleport Investors, Inc. v. Budco _______ ____ __________________________ _____ Quality Theatres, 741 F.2d 273, 280 n.4 (9th Cir. 1984) ("abuse of ________________ discretion" review of forum selection clause dismissal under Rule 12(b)(3)). II II DISCUSSION DISCUSSION __________ The order form filled out by Joan Kysar, and amended by Lambert in July 1989, provided, inter alia, that "[i]n the event any _____ ____ action is brought to enforce [the] terms and conditions [of the order documents], venue shall lie exclusively in Clark County, Washington." The Kysars assert, and the district court impliedly found, that the order form expressed the terms and conditions of the agreement between the parties and that Lambert is bound by the choice of forum made in the order form. Lambert vigorously disagrees. According to Lambert, the changes he made to the quantity term on the Kysars' order form amounted to a material alteration (and therefore a rejection) of the Kysar offer, paving the way for a counteroffer in the form of Lam- bert's August 21 letter. Since the August 21 letter contained neither a forum selection clause nor an express choice-of-law provision, Lambert asserts that venue and choice-of-law rules are to be deter- mined under general common-law and statutory principles. In particu- lar, Lambert asserts, the Massachusetts venue remains proper under the 6 general rules applicable to removed cases in federal courts, i.e., 28 ____ U.S.C. 1441.2 We agree with the first part of Lambert's argument. The changes Lambert made to the quantity term amounted to a rejection ____________________ 2Lambert's opposition to the Kysars' motion to dismiss also seems to assert: (1) that the Kysars waived their right to plead improper venue by filing the removal petition, thereby implicitly acknowledging the district court's authority to hear the case; and (2) that even if the removal petition did not constitute a per se waiver of their right ___ __ to plead improper venue, in the present case waiver can be implied from the representation made in the removal petition that "[v]enue in [Massachusetts federal] Court [was] proper under 28 U.S.C. 1391." Neither assertion is sound. Although it is axiomatic that a defendant must mount any challenge to venue at the earliest possible opportuni- ty, see Graver Tank & Mfg. Corp. v. New England Terminal Co., 125 F.2d ___ ________________________ ________________________ 71, 74 (1st Cir. 1942), the Kysars properly preserved their right to challenge venue by raising it in the state court action and renewing it in their first pleading following removal. It is well settled that the filing of a removal petition in a diversity action, without more, does not waive the right to object in federal court to the state court venue. In order to obtain the benefits of a federal forum in diversi- ty cases, "[the] removal must be 'into the district where such suit is ____ __ pending'[; n]o choice is possible and for that reason nothing in respect to venue can be waived." Moss v. Atlantic Coast Line R. Co., ____ __________________________ 157 F.2d 1005 (2d Cir. 1946), cert. denied, 330 U.S. 839 (1947) ____ ______ (emphasis added). This analysis is not altered by the Kysars' assertion, in their removal petition, that venue in Massachusetts federal district court was proper under 28 U.S.C. 1391. Even if their assertion could be construed as a waiver of any objection to venue under 28 U.S.C. 1391, the venue of a removed action is not governed by 1391, but by 28 U.S.C. 1441(a). Indeed, removal of an action to a proper forum under 1441(a) frequently has been considered a waiver or cure of any defect in the original venue of the removed action under 28 U.S.C. 1391. See Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 665 ___ _______ ________________________ (1953); Seaboard Rice Milling Co. v. Chicago, R.I. & P.R. Co., 270 __________________________ __________________________ U.S. 363 (1926); Minnesota Mining & Mfg. Co. v. Kirkevold, 87 F.R.D. ____________________________ _________ 317, 321-22 (D. Minn. 1980); Tanglewood Mall, Inc. v. Chase Manhattan _____________________ _______________ Bank, 371 F. Supp. 722, 725 (W.D. Va.), aff'd, 508 F.2d 838 (4th Cir. ____ _____ 1974), cert. denied, 421 U.S. 965 (1975). Here, of course, a differ- ____ ______ ent issue is presented, since a valid forum selection clause operates to render the venue improper, not only under 1391, but also under ___ ____ ___ ____ 1441(a). 7 under Article 2 of the Uniform Commercial Code, and the Kysars' performance of the new contract amounted to an acceptance of the new terms proposed by Lambert. We disagree with the second part of Lambert's argument, however. Lambert's counteroffer was made in July, when he amended the order form containing the Kysars' original offer, not in Lambert's August 21 letter. Accordingly, the counteroffer ___ incorporated the unamended terms and conditions contained in the original offer, including its venue and choice-of-law clauses. Since the venue clause impliedly mandating a Washington forum is enforceable under both state and federal common law, the district court properly dismissed the action. A. The Contract A. The Contract ____________ The parties disagree on whether a Massachusetts court would apply Massachusetts or Washington law to the formation of their contract. See Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941) ___ ______ _______________________ (federal court sitting in diversity must apply forum state's choice- of-law rules). We need not resolve the issue, however, as the outcome is the same under the substantive law of either jurisdiction. See ___ Cohen v. McDonnell Douglas Corp., 389 Mass. 327, 332, 450 N.E.2d 581, _____ _______________________ 584 (1983) ("the usual first step in applying conflict of laws prin- ciples is to determine whether there is a conflict among the laws of the various states involved"). Christmas trees are "goods" within the meaning of Uniform Commercial Code, Article II, as adopted in both Massachusetts and 8 Washington.3 Moreover, the common law of both jurisdictions, which remains in force under the U.C.C. except as displaced, see U.C.C. 1- ___ 103, Mass. Gen. L. ch. 106 1-103, Wash. Rev. Code 62A.2-103, sup- ports the validity and enforceability of the subject contract, includ- ing its forum selection clause. Under the law of both Massachusetts and Washington, the order form (signed and forwarded to Lambert in July 1989) comprised an offer to contract in accordance with its terms.4 It set forth in detail all the material terms essential to the proposed transaction, including the price, quantity and quality of the goods. It provided a ____________________ 3Christmas trees have been described as "growing crops or other things attached to realty and capable of severance without material harm thereto," U.C.C. 2-107, Mass. Gen. L. ch. 106 2-107(2) (1979); Wash. Rev. Code 62A.2-107(2). See Groth v. Stillson, 174 N.W.2d 596, ___ _____ ________ 598 (Mich. App. 1969); cf. Rainier Nat'l Bank v. Security State Bank, ___ __________________ ___________________ 59 Wash. App. 161, 796 P.2d 443 (1990), rev. denied, 117 Wash. 2d ____ ______ 1004, 815 P.2d 166 (1991) (Christmas trees are "growing crops" for purposes of Article 9). Alternatively, though somewhat less plausi- bly, the parties' July arrangement for delivery of Christmas trees might be viewed as a contract for sale of "timber to be cut." U.C.C. 2-107, Mass. Gen. L. ch. 106, 2-107(2) (1979); Wash. Rev. Code 62A.2-107(2). In either event, a sale of Christmas trees is a "trans- action in goods" governed by the Uniform Commercial Code. See U.C.C. ___ 2-105, Mass. Gen. L. ch. 106 2-105(1); Wash. Rev. Code 62A.2-105; see also Traynor v. Walters, 342 F.Supp. 455, 459 (M.D. Pa. 1972); ___ ____ _______ _______ Kirk Co. v. Ashcraft, 684 P.2d 1127 (N.M. 1984); Whewell v. Dobson, _________ ________ _______ ______ 227 N.W.2d 115, 117 (Iowa 1975). 4As the evidentiary foundation for determining the formation of the parties' contract was either undisputed or consisted of writings, Lambert's present challenge raises issues of law for the court. Ismert & Associates, Inc. v. New England Mut. Life Ins. Co., 801 F.2d _________________________ _______________________________ 536 (1st Cir. 1986) (citing David J. Tierney, Jr., Inc. v. T. Welling- ___________________________ ___________ ton Carpets, Inc., 8 Mass. App. Ct. 237, 239, 392 N.E.2d 1066, 1068 __________________ (1979)); Bresky v. Rosenberg, 256 Mass. 66, 75, 152 N.E. 347, 351 ______ _________ (1926); R.J. Menz Lumber Co. v. E.J. McNeeley & Co., 58 Wash. 223, _____________________ ____________________ 229, 108 P. 621, 624 (1910). Lambert adverts to no other evidence which would alter the result reached here. 9 space for Lambert's signature, to indicate that he had "read and accept[ed] the Terms of Sale on the reverse side of th[e] document." It included the signature of Joan Kysar, an officer of Lewis River Tree Farm, indicating assent to be bound. See Restatement (Second) of ___ Contracts 24 (offer is "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it"); Gilbert _______ & Bennett Mfg. Co. v. Westinghouse Elec. Corp., 445 F. Supp. 537, 544 ___________________ ________________________ (D. Mass. 1977) ("an offer is made when the offeror leads the offeree to reasonably believe that an offer has been made"). Although the back of the form included a provision for "approval" by the Lewis River Tree Farm's "main office", Joan Kysar's status as an officer of the company and her signature on the front of the form reasonably denoted such approval. Compare Kuzmeskus v. Pickup Motor Co., 330 _______ _________ _________________ Mass. 490, 493, 115 N.E.2d 461, 464 (1953) (contract proffered by company's general manager, which contained clause requiring authoriza- tion by seller's corporate officer, and blank space for officer's _____ _____ signature, held to be "no more than an invitation or request to give orders on the terms and conditions therein stated"; "[i]f the general manager was an officer of the company with power to authorize the sales, he said or did nothing to inform the plaintiff that he was taking favorable action"). Under the law of both Washington and Massachusetts, Lam- bert's substitution of a substantially lower quantity term amounted to a rejection of the Kysars' offer to sell, and a counteroffer to 10 purchase the lesser quantity of trees.5 See Minneapolis & St. L.R. ___ _______________________ v. Columbus Rolling-Mill Co., 119 U.S. 149 (1886) (order for 1200 tons _________________________ of steel rails indicated rejection of offer to sell 2000-5000 tons of rails); see generally Restatement (Second) of Contracts 59 ("a ___ _________ reply to an offer which purports to accept it but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counteroffer"); Banks v. Cres- _____ _____ cent Lumber & Shingle Co., 61 Wash.2d 528, 530-31, 379 P.2d 203 ____________________________ (1963); Owens-Corning Fiberglas Corp. v. Fox Smith Sheet Metal Co., 56 _____________________________ _________________________ Wash.2d 167, 170, 351 P.2d 516, 518 (1960); Champlin v. Jackson, 317 ________ _______ Mass. 461, 463-64, 58 N.E.2d 757 (1945); Kehlor Flour Mills v. Linden, __________________ ______ 230 Mass. 119, 123, 119 N.E. 698 (1918). Lambert's counteroffer to purchase, made on the same form as the Kysars' offer to sell, and containing Lambert's signature indicating that he had "read and accept[ed] the Terms of Sale on the reverse side," incorporated all the unamended terms in the original offer form; that is, all its terms except the quantity of trees.6 See Construction Aggregates Corp. v. ___ ______________________________ Hewitt-Robins Inc., 404 F.2d 505 (7th Cir. 1968), cert. denied, 395 ___________________ ____ ______ ____________________ 5Our analysis makes it unnecessary to address Lambert's argument that the same result might be reached by crediting the printed condition on the reverse side of the order form: "No modifications of the terms of this agreement shall be effective unless reduced to writing and executed in writing by both parties hereto." 6Lambert's August 21, 1989 letter of confirmation ratified and reconfirmed the terms of his counteroffer. The letter referred to "our tree order" and enclosed a deposit for the quantity of trees Lambert ordered. Nowhere did it indicate that the counteroffer was being revoked or made conditional on an assent to any additional term. 11 U.S. 921 (1969) (seller's stated objection to one term of counteroffer may be treated as acquiescence in remaining terms); cf. Romala Corp. ___ ____________ v. United States, 927 F.2d 1219, 1221 (Fed. Cir. 1991) (seller's ______________ submission of purchaser's bid form, altering some paragraphs but not others, amounted to acquiescence in unaltered terms). Since Lambert's alteration of the quantity term amounted to a rejection of the original offer, rather than a mere modification or _________ ____________ supplementation of the boilerplate language in the original offer _______________ form, this is not an appropriate case for the application of U.C.C. 2-207(2), Mass. Gen. L. ch. 106 2-207(2), Wash. Rev. Code 62A.2- 207(2). See, e.g., Duval & Co. v. Malcom, 233 Ga. 784, 787, 214 ___ ____ ____________ ______ S.E.2d 356, 358 (1975) (holding 2-207 inapplicable where offer and purported acceptance differed on quantity of goods to be sold); see ___ generally James J. White & Robert S. Summers, Uniform Commercial Code, _________ _______________________ 1-3, p. 33 (3d ed. 1980) [hereinafter: White & Summers] (suggesting _______________ inapplicability of U.C.C. 2-207 in cases of substantial divergence, e.g., where forms "diverge as to price, quality, quantity, or delivery ____ ________ terms") (emphasis added). Since U.C.C. 2-207 is inapplicable to the facts of this case, we need not consider the apparent conflict between our interpretation of 2-207 in Roto-Lith, Ltd. v. F.P. Bartlett & _______________ _______________ Co., 297 F.2d 497 (1st Cir. 1962), and the interpretation adopted by ___ the courts of Washington and other jurisdictions.7 ____________________ 7Roto-Lith holds, as a matter of Massachusetts law, that a purported _________ acceptance "which states a condition materially altering the obliga- tion solely to the disadvantage of the offeror" operates as a counter- offer expressly conditioned on the offeror's assent to the additional 12 Whether the Kysars accepted Lambert's counteroffer in August, by accepting his deposit check, see Rockwood Mfg. Corp. v. ___ ____________________ AMP, Inc., 806 F.2d 142, 144-145 (7th Cir. 1986) ("the act of cashing _________ a check can function as an acceptance of an offer in certain circum- stances") (collecting cases); cf. Hobbs v. Massasoit Whip Co., 158 ___ _____ ___________________ Mass. 194, 197, 33 N.E. 495, 495 (1893) ("conduct which imports acceptance or assent is acceptance or assent in the view of the law"), or by seasonably shipping the number of Christmas trees requested in Lambert's counteroffer, see U.C.C. 2-206(1) ("an offer to make a ___ contract shall be construed as inviting acceptance in any manner and by any medium reasonable under the circumstances"); see also U.C.C. ___ ____ 2-206(2) ("an offer to buy goods for prompt or current shipment shall be construed as inviting acceptance . . . by the prompt or ____________________ term. 297 F.2d at 500; see also Teradyne, Inc. v. Mostek Corp., 797 ___ ____ ______________ ____________ F.2d 43, 55 (1st Cir. 1986) (citing Roto-Lith); Gilbert & Bennett _________ __________________ Mfg., 445 F. Supp. at 546 (same). The Roto-Lith rule has never been ____ _________ repudiated by the Massachusetts Supreme Judicial Court ("SJC"), though it has been received critically by commentators, see, e.g., White & ___ ____ _______ Summers at 33, and its precedential value has been questioned. See _______ ___ Polyclad Laminates, Inc. v. Vits Maschinenbau GmBH, 749 F. Supp. 342, _________________________ ______________________ 344 (D. N.H. 1990); St. Charles Cable TV, Inc. v. Eagle Comtronics, ___________________________ _________________ Inc., 687 F. Supp. 820, 828 n.19 (S.D.N.Y. 1988). ____ The Washington Supreme Court appears not to have ruled on the issue, but in Hartwig Farms, Inc. v. Pacific Gamble Robinson Co., 28 ___________________ ___________________________ Wash. App. 539, 543-44, 625 P.2d 171, 174 (1981), the Washington Court of Appeals expressly declined to follow Roto-Lith, holding that the _________ addition of a material term in the buyer's acceptance did not amount to a rejection. Rather, the terms on which parties do not expressly agree "dropped out" of the contract and were replaced (where possible) by the U.C.C.'s "gap-filler" provisions. See, e.g., U.C.C. 2-306(1), ___ ____ Wash. Rev. Code 62A.2-306(1) (implying quantity term in output and requirements contracts; measuring quantity in these cases by "such actual output or requirements as may occur in good faith"). See ___ generally White & Summers, at 38-40 (3d ed. 1988) (collecting cases, _________ _______________ and discussing proper interpretation of UCC 2-207). 13 current shipment of conforming or non-conforming goods"), under the law of both Washington and Massachusetts the Kysars accepted Lambert's counteroffer by November 1989 at the latest. The Kysars' acceptance, whenever it is deemed to have occurred, operated under the law of both jurisdictions to bind the contracting parties to all terms printed on the reverse side of the original order form, including the forum selection clause.8 B. The Forum Selection Clause B. The Forum Selection Clause __________________________ We turn to the forum selection clause. Federal courts have long enforced forum selection clauses as a matter of federal common law. See The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972) ___ __________ _____________________ (forum clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances"); Docksider, Ltd. v. Sea Technology, Ltd., 875 F.2d _______________ ____________________ 762, 764 (9th Cir. 1989) ("The prevailing rule is clear... that where venue is specified with mandatory language the clause will be en- forced"). Washington state law on the validity and enforcement of forum selection clauses is drawn from the Restatement (Second) of Conflict of Laws, see Exum v. Vantage Press, Inc., 17 Wash. App. 477, ___ ____ ___________________ 478, 563 P.2d 1314, 1315 (1977), which appears generally to accord with federal common law. See Zapata, 407 U.S. at 11 and n.13 (citing ___ ______ ____________________ 8Lambert makes no claim that the forum selection clause was insufficiently conspicuous. 14 Restatement (Second) of Conflict of Laws 80); see also Willis ___ ____ Reese,9 Supreme Court Supports Enforcement of Choice of Forum Claus- ______________________________________________________________ es, 7 Intl. L. 530 (1972) ["Supreme Court Supports Enforcement"] __ ____________________________________ (expressing view that Zapata analysis should be persuasive in state ______ law context). Thus, as we discern no material discrepancy between Washington state law and federal law, we need confront neither the choice-of-law issue nor the daunting question whether forum selection clauses are to be treated as substantive or procedural for Erie ____ purposes.10 See Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., ___ ____________________ ___________________________ ____________________ 9Professor Reese served as Reporter for the Restatement (Second). 10The Supreme Court has yet to provide a definitive resolution of the Erie issue, see Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. ____ ___ ___________________________ ____________ 22, 28-29 (1987) (declining to reach Erie issue), which has divided ____ the commentators and split the circuits. The Second, Ninth and Eleventh Circuits essentially treat forum clauses as procedural, and apply federal common law to determine their validity in diversity cases. See Jones v. Weibrecht, 901 F.2d 17, 19 (2d Cir. 1990); ___ _____ _________ Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509 (9th Cir. _____________________ ____________________ 1988); Stewart Organization v. Ricoh Corp., 810 F.2d 1066 (11th Cir. ____________________ ___________ 1986) (en banc), aff'd on other grounds, 487 U.S. 22 (1988); see also _____ __ _____ _______ ___ ____ Taylor v. Titan Midwest Constr. Corp., 474 F.Supp. 145 (N.D. Tex. ______ _____________________________ 1979) (applying federal common law on policy grounds, without consid- ering Erie issue); cf. Northwestern Nat'l. Ins. Co. v. Donovan, 916 ____ ___ _____________________________ _______ F.2d 372, 374 (7th Cir. 1990) (Posner, J.) (suggesting that the application of federal common law is "probably correct"). The Third and Eighth Circuits, and Justice Scalia (who sought to reach the Erie ____ issue in Stewart), seem to view forum selection clauses as substan- _______ tive, and would apply state law to determine their validity in the diversity context. See Stewart Organization, 487 U.S. at 38-41 ___ ____________________ (Scalia, J., dissenting); General Eng'g Corp. v. Martin Marietta _____________________ ________________ Alumina, Inc., 783 F.2d 352, 356 (3rd Cir. 1986); Farmland Indus. v. _____________ _______________ Frazier-Parrott Commodities, Inc., 806 F.2d 848 (8th Cir. 1986); but __________________________________ ___ see Sun World Lines, Ltd. v. March Shipping Corp., 801 F.2d 1066, 1069 ___ _____________________ ____________________ (8th Cir. 1986) (applying federal common law) (alternate holding). This court has yet to take a position on the issue, although district courts within the circuit have endorsed the Ninth and Eleventh Circuit approach, see, e.g., Northeast Theatre Corp. v. Edie & Ely Landau, ___ ____ ________________________ ____________________ Inc., 563 F. Supp. 833 (D. Mass. 1983), and on one occasion we tenta- ____ 15 709 F.2d 190 (3rd Cir. 1983) (declining to reach Erie issue because ____ state law and federal law did not conflict). Relying on early Massachusetts decisions, however, Lambert argues that forum selection clauses which oust the jurisdiction of Massachusetts courts are unenforceable under Massachusetts law. See ___ Nashua River Paper Co. v. Hammermill Paper Co., 223 Mass. 8, 111 N.E. ______________________ _____________________ 678 (1916); see also Nute v. Hamilton Mut. Ins. Co., 72 Mass. (1 ___ ____ ____ _______________________ Gray) 174 (1856) (intrastate forum clause); cf. Cadillac Auto. Co. v. ___ __________________ Engeian, 339 Mass. 26, 29, 157 N.E.2d 657, 659 (1959) (holding forum _______ selection clauses "generally" unenforceable under Massachusetts law, but noting conflicting caselaw authority, and declining to reach the issue). It is true that these decisions are still cited and followed, at least in circumstances where the defendant invokes a forum selec- tion clause in an attempt to deprive the Massachusetts forum of jurisdiction. See J.S.B. Industries v. Bakery Machinery Distrib., ___ _________________ __________________________ 1991 Mass. App. Div. 1, 1-2 (1991) (holding contractual selection of New York forum unenforceable under Massachusetts law); see also ___ ____ Northeast Theatre Corp. 563 F. Supp. at 834 (D. Mass. 1983) (stating, _______________________ ____________________ tively treated a forum selection clause as procedural for the limited purposes of the factor analysis required under the forum non conveni- ens doctrine articulated in Gulf Oil v. Gilbert, 330 U.S. 501 (1947). ________ _______ See Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis ___ _______________________ _______________________________________ Ltda., 906 F.2d 45, 49 (1st Cir. 1990). The complexities of the issue _____ have been well documented in several student notes. See, e.g., Robert ___ ____ A. de By, Note, Forum Selection Clauses: Substantive or Procedural for ______________________________________________________ Erie Purposes, 89 Colum. L. Rev. 1068 (1989); Julia L. Erickson, ______________ Forum Selection Clauses in Light of the Erie Doctrine and Federal ______________________________________________________________________ Common Law: Stewart Organization v. Ricoh Corporation, 72 Minn. L. _______________________________________________________ Rev. 1090 (1988). 16 in dictum, that contractual selection of California forum would be unenforceable under Massachusetts law); compare Graphics Leasing Corp. _______ ______________________ v. The Y Weekly, 1991 Mass. App. Div. 110 (1991) (holding forum _____________ selection clause enforceable where parties sought to designate Massa- chusetts forum); Diversified Mortg. Investors v. Viking Gen. Corp., 16 ____________________________ _________________ Mass. App. Ct. 142, 450 N.E.2d 176, 179 (1983) (suggesting enforce- ability of forum clause designating Massachusetts forum). Recently, however, the SJC has indicated (in dictum) a more receptive view toward forum selection clauses, see W.R. Grace & Co. v. Hartford ___ __________________ ________ Accident & Indem. Co., 407 Mass. 572, 582 n.13, 555 N.E.2d 214, 219 ______________________ n.13 (1990) ("we see nothing inherently inappropriate in a forum selection clause"), which appears to accord with the view adopted by most other state courts, see Francis M. Dougherty, Annotation, Validi- ___ _______ ty of Contractual Provision Limiting Place or Court in Which Action ______________________________________________________________________ May Be Brought, 31 A.L.R. 4th 404 (1992), and with the prevailing ______________ federal court view that forum clauses foster policy interests impor- tant to the parties and the courts. Zapata, 407 U.S. at 8; Stewart ______ _______ Organization, 487 U.S. at 33 (Kennedy and O'Connor, JJ, concurring); ____________ see Fireman's Fund Am. Ins. Cos. v. Puerto Rican Forwarding Co., 492 ___ _____________________________ ____________________________ F.2d 1294, 1297 (1st Cir. 1974); Northeast Theatre Corp., 563 F. Supp. _______________________ at 834; see also Ernest & Norman Hart Bros., Inc. v. Town Contrac- ___ ____ _________________________________ _____________ tors, Inc., 18 Mass. App. Ct. 60, 64, 463 N.E.2d 355, 358-59 (1984), ___________ rev. den., 392 Mass. 1103, 465 N.E.2d 262 (1984) (surveying caselaw, ____ ____ noting that "the general attitude of courts towards contractual forum selection provisions obviously has changed in the direction of recog- 17 nizing them", and suggesting that Nashua River and Nute, see supra at _____________ ____ ___ _____ p. 16, no longer express viable policy in light of evolving federal doctrine). The current status of Massachusetts law on this issue has been termed "unclear," Geiger v. Keilani, 270 F. Supp. 761, 766 (E.D. ______ _______ Mich. 1967), and the vitality of the Nute and Nashua River precedents ____ ____________ clouded. "Attorneys advising clients probably would be unwise to rely on the persistence of the Nute principle in future Massachusetts cases ____ . . . . [although] counsel . . . even now cannot be certain . . . that Massachusetts will follow [the] newer view [expressed in Zapata]. If ______ the Supreme Judicial Court should now decide to do so, it well may adopt the modern view prospectively only and in very flexible form . . .," Ernest & Norman Hart Bros., 18 Mass. App. Ct. at 64, 463 ____________________________ N.E.2d at 359; but see Scheck v. Burger King Corp., 756 F. Supp. 543, ___ ___ ______ __________________ 546 (S.D. Fla. 1991) (assuming, without discussion, that Massachusetts courts now would follow federal law, as enunciated by the First Circuit, and uphold prima facie validity of forum selection clauses). The viability of Nute and Nashua River is not determinative ____ ____________ in the present case, however, as we think the Massachusetts courts, consistent with the contracting parties' intention, would apply Washington law to determine the enforceability of the forum selection clause.11 See Michael Gruson, Forum-Selection Clauses in Internation- ___ _______________________________________ ____________________ 11This approach, which relies on the contracting parties' choice of law as a basis for determining the enforceability of their forum selection, has been criticized on the ground that "jurisdiction and venue are concerns separate from choice of law, and . . . determining the former usually precedes determination of the latter." See Linda ___ S. Mullenix, Another Choice of Forum, Another Choice of Law: Consensu- _________________________________________________________ 18 al and Interstate Commercial Agreements, 1982 U. Ill. L. Rev. 133, 156 _______________________________________ & n.228 [Forum Selection Clauses] ("most states determine the _____ _________ _______ enforceability of forum-selection clauses under the law governing the contract"). The present contract provides that the interpretation of the "terms and conditions of the order documents," including the forum selection clause, must be governed by Washington law; and even though Massachusetts law on the enforcement of forum clauses is unsettled, its courts routinely enforce choice-of-law provisions unless the law chosen violates established public policy or bears no reasonable relationship to the contractual transaction between the parties. See ___ Mass. Gen. L. 1-105(1); Morris v. Watsco, Inc., 385 Mass. 672, 674- ______ ____________ 75, 433 N.E.2d 886, 887 (1982); Comdisco Disaster Recovery Servs. v. _________________________________ ____________________ al Adjudicatory Procedure in Federal Court, 57 Fordham L. Rev. 291, ____________________________________________ 347 (1988); see also Instrumentation Assocs., 859 F.2d at 5 (holding ___ ____ ________________________ that "[lower] court erred by deciding the validity of the contract's choice of law before considering the threshold question of whether the parties' contractual choice of a Canadian forum was enforceable under the conflict of laws principles embodied in Erie"). We do not agree. ____ It is well established that a forum selection clause does not divest a court of jurisdiction or proper venue over a contractual ______ dispute. Rather, a court addressing the enforceability of a forum selection clause is to consider whether it must, in its discretion, __ ___ __________ decline jurisdiction and defer to the selected forum. See Zapata, 407 _______ ___ ______ U.S. at 12; LFC Lessors, 739 F.2d at 6-7. Thus, the constitutional ___________ concerns which prompt the rule that determination of jurisdictional issues should "usually precede" determination of substantive law apply only weakly, if at all, in forum selection cases following Zapata. ______ Moreover, following Norton v. Mathews, 427 U.S. 524, 528-33 (1976), we ______ _______ repeatedly have held that complex jurisdictional issues may be by- passed in circumstances where it is clear that the party challenging jurisdiction will prevail on substantive grounds in any event. See, ___ e.g., Howard v. Rhode Island Hospital Trust, slip op. at 13 (December ____ ______ ___________________________ 2, 1992). Thus, we may bypass the Erie analysis, where state law ____ provides a straightforward substantive basis for resolving the present controversy. 19 Money Management Systems, Inc., 789 ______________________________ F. Supp. 48, 52 (D. Mass. 1992). The Nute and Nashua River cases did ____ ____________ invoke public policy justifications for resisting forum selection clauses, viz., the dangers of overreaching and the difficulties of ____ applying foreign law in a chosen forum. But even these earlier decisions "place[d] no great reliance upon" these public policy con- siderations, Nute, 72 Mass. (1 Gray) at 184, which have been undercut ____ in any event by more recent legal and historical developments.12 We ____________________ 12The Nute court expressed the view that "the greatest inconvenience ____ [of contractual forum transfers] would be in requiring courts and juries to apply different rules of law in different cases, in the conduct of suits," 72 Mass. (1 Gray) at 184. It also noted that "contracts [including forum clauses] might be induced by consider- ations tending to bring the administration of justice into disrepute, such as the greater or less intelligence and impartiality of judges, the greater or less integrity and capacity of juries, [and] the influence, more or less, arising from the personal, social or politi- cal standing of parties in one or another [jurisdiction]." Id. ___ We think that modern caselaw developments, including the Massa- chusetts courts' willingness to entertain motions to dismiss based on the doctrine of forum non conveniens, see Universal Adjustment Corp. ___ ___________________________ v. Midland Bank, Ltd., 281 Mass. 303, 184 N.E. 152 (1933) (Rugg, J.), __________________ to permit forum selection clauses in contracts principally involving nonresidents, Mittenthal v. Moscagni, 183 Mass. 19, 23 (1903), and to __________ ________ enforce forum selection clauses which vest jurisdiction in Massachu- setts courts, see Graphics Leasing, 1991 Mass. App. Div. at 111, ___ _________________ suggest that Commonwealth courts have largely abandoned any policy concern that the contracting parties' mutual selection of a non- Massachusetts forum will impugn "the dignity or convenience of the [Massachusetts] courts." Id. Furthermore, the Commonwealth courts' ___ more recent acceptance of contracting parties' choice-of-law provi- sions, Morris, 385 Mass. at 674, and of "flexible" choice-of-law ______ rules, Bushkin Assoc. v. Raytheon Co., 393 Mass. 622, 473 N.E.2d 662 ______________ ____________ (1985), would appear to erode Nute's earlier endorsement of the view ____ that the application of "different rules of law in different cases" would lead to "great[] inconvenience" for courts or juries. Nashua River, decided after Nute, noted that the rule against ____________ ____ enforcement of forum selection clauses "related to a matter as to which uniformity of decision and harmony of law among the several jurisdictions of this country is desirable." 223 Mass. at 16. The 20 think the diminishing importance of the policies cited in these earlier cases, their waning support in more recent Massachusetts decisions, and the increasing role and vigor of federal doctrine, would leave a Massachusetts court unconstrained by the same policy considerations in applying the parties' chosen law to the choice-of- forum determination in the present case. See Restatement (Second) of ___ Contracts 178(3) ("in weighing a public policy against enforcement of a term, account is taken of (a) the strength of that policy as ________________________ manifested by legislation or judicial decisions . . . .") (emphasis added). As we discern no significant public policy militating against the application of Washington law in the present circumstances, and Washington law obviously bore a reasonable relationship to the con- tract between the parties, we think the Massachusetts courts would enforce the parties' choice of Washington law. ____________________ SJC noted in Nashua River that virtually all state and federal courts ____________ at that time refused to enforce forum selection clauses. Thus, a fundamental policy consideration, which underlay the Nute and Nashua ____ ______ River decisions, has undergone an about-face in recent years, as forum _____ selection clauses are now favored by the majority of state courts and _______ by the federal courts. See supra p. 17. ___ _____ These historical changes may well explain why the only other rationale for the Nute and Nashua River precedents the presumed ____ ____________ invalidity of contractual attempts to "oust appropriate courts of their jurisdiction," Nashua River, 223 Mass. at 19 has been reject- ____________ ed by the Supreme Court as "hardly more than a vestigial legal fic- tion," predicated on "a provincial attitude regarding the fairness of other tribunals." Zapata, 407 U.S. at 12. As noted, however, the SJC ______ is not bound by the view expressed in Zapata, and its adoption cannot ______ be presumed. See also Ernest & Norman Hart Bros., 18 Mass. App. at ___ ____ ___________________________ 64, 463 N.E.2d at 358-59 ("[i]f the Supreme Judicial Court should now decide to [follow Zapata], it may well adopt the modern view prospec- ______ tively only and in very flexible form"); see also White-Spunner ___ ____ _____________ Constr., Inc. v. Cliff, 588 So.2d 865, 866 (Ala. 1991) (reaffirming ______________ _____ invalidity of forum clauses under Alabama law). 21 22 C. Reasonableness of Washington Forum C. Reasonableness of Washington Forum __________________________________ Under federal law and Washington state law, the contracting parties' forum selection is to be respected unless the challenging party "clearly show[s] that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." Zapata, 407 U.S. at 15; see also Exum, 17 Wash. App. ______ ___ ____ ____ at 478-79, 563 P.2d at 1315; cf. Mangham v. Gold Seal Chinchillas, ___ _______ _______________________ Inc., 69 Wash.2d 37, 45, 416 P.2d 680, 686 (1966) (intrastate agree- ____ ment); Bechtel Civil & Minerals, Inc. v. South Columbia Basin Irrig. _______________________________ ____________________________ Dist., 51 Wash. App. 143, 146, 752 P.2d 395, 396 (1988) (same). Any _____ alleged overreaching must be based on something more than the mere fact that the clause was a "boilerplate" provision printed on the back of a form contract. See Donovan, 916 F.2d at 377. "It is not the law ___ _______ that one must bargain for each and every written term of a contract," Lyall v. DeYoung, 42 Wash. App. 252, 256, 711 P.2d 356, 359 (1985); _____ _______ "simply because the provision was part of what is called the 'boiler- plate' section of the contract does not in itself make it unfair." Reynolds Indus., Inc. v. Mobil Oil Corp., 618 F. Supp. 419, 423 (D. ______________________ ________________ Mass. 1985). Lambert does not base the present claim on the ground that the forum selection clause is a "boilerplate" provision. The princi- pal contention is that the forum selection clause should be overturned because it would be "seriously inconvenient" for Lambert. Lambert cites Exum, 17 Wash. App. at 478-79, 563 P.2d at 1315, in which the ____ 23 Washington Court of Appeals upheld a trial judge's discretionary refusal to dismiss an action under a forum clause which required the suit to be brought in New York. The Exum court noted that "all ____ contacts were made in Washington, partial performance was to be within the state, all the plaintiff's witnesses reside within the State of Washington, Defendant's Vice President who solicited Plaintiff resides in [a state other than New York, and] it would be unjust, inequitable, and unreasonable to require Plaintiff and all the witnesses to travel to New York State to litigate the case." Id. See also Gold Seal ___ ___ ____ __________ Chinchillas, 69 Wash.2d at 46-47, 416 P.2d at 686 (refusing to trans- ___________ fer case to contractually selected out-of-state forum, on ground that chosen forum was "totally unreasonable": all parties and witnesses resided in Washington, contracts were made and to be performed entire- ly in Washington, and the dispute was governed by Washington law). We think Lambert misinterprets Exum. The "serious inconven- ____ ience" test applied in Exum was discussed in detail by the Supreme ____ Court in Zapata, which also cited the rule of Restatement (Second) of ______ Conflicts of Laws 80, see 407 U.S. at 11, and which has been cited ___ with approval by the Washington courts. See Bechtel Civil, 51 Wash. ___ ______________ App. at 146, 752 P.2d at 397 (citing Zapata); see also Supreme Court ______ ___ ____ _____________ Supports Enforcement, supra, at 530 (advocating Zapata's application ____________________ _____ ______ to state laws which are based on the Restatement (Second)); see ___ generally American Mobile Homes of Washington, Inc. v. Sea-First Nat'l _________ _________________________________________ _______________ Bank, 115 Wash.2d 307, 313, 796 P.2d 1276, 1279 (1990) ("when a state ____ rule is similar to a parallel federal rule we sometimes look to 24 analysis of the federal rule for guidance"). Zapata held (as a matter ______ of federal law) that: [W]here it can be said with reasonable assurance that at the time they entered the contract, the parties to a freely negotiated private interna- tional commercial agreement contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable. We are not __ ___ ___ here dealing with an agreement between two Ameri- ____ _______ ____ __ _________ _______ ___ ______ cans to resolve their essentially local disputes ____ __ _______ _____ ___________ _____ ________ in a remote alien forum. In such a case, the __ _ ______ _____ _____ __ ____ _ ____ ___ serious inconvenience of the contractual forum to _______ _____________ __ ___ ___________ _____ __ one or both of the parties . . . might suggest ___ __ ____ __ ___ _______ _____ _______ that the agreement was an adhesive one, or that ____ ___ _________ ___ __ ________ ___ __ ____ the parties did not have the particular contro- ___ _______ ___ ___ ____ ___ __________ _______ versy in mind when they made their agreement; yet _____ __ ____ ____ ____ ____ _____ _________ ___ even there the party claiming should bear a heavy ____ _____ ___ _____ ________ ______ ____ _ _____ burden of proof. ______ __ _____ 407 U.S. at 16-17 (emphasis added).13 We think Exum and, more ____ importantly, Gold Seal Chinchillas, fall within the exception Zapata ______________________ ______ articulated to forum selection clause enforceability: in each case, the defendant sought transfer of an "essentially local dispute" to a selected forum which was alien to all parties (so far as the record ___ _______ shows), and largely unconnected with the contractual relations at issue in the case. See Gold Seal Chinchillas, 69 Wash.2d at 46-47, ___ _____________________ 416 P.2d at 686; Exum, 17 Wash. App. at 479, 563 P.2d at 1316-16. ____ ____________________ 13Later federal cases, in this and other circuits, have sometimes applied an even stricter standard, requiring sophisticated commercial defendants to show that they would suffer such serious inconvenience in litigation in the foreign forum that they would be effectively deprived of their day in court. See Fireman's Fund, 492 F.2d at 1297; ___ ______________ see also, e.g., Pelleport Investors, 741 F.2d at 279; LFC Lessors, ___ ____ ____ ___________________ _____________ Inc. v. Pearson, 585 F. Supp. 1362, 1365 (D. Mass. 1984). ____ _______ 25 The bases for the parties' selection of the Washington forum in the present case are quite dissimilar. The Kysars reside and operate their business in Washington. Their interest in selecting a forum the consolidation of litigation involving far-flung opera- tions was eminently reasonable. The contract in litigation has strong links to Washington, where it was accepted and largely per- formed. Moreover, Washington is no more "remote" from Lambert's place of business than when he executed the order form, either on the occasion of the present agreement or prior agreements between these parties. The forum selection clause was printed clearly on the reverse side of the form, in plain language, and the contract was not so long as to make it difficult or impossible to read. See D'Antuono ___ _________ v. CCH Computax Sys., Inc., 570 F. Supp. 708, 714 (D.R.I. 1983) _________________________ (Selya, J.) (interpreting buyer's signature in similar circumstances as indicative of awareness of forum selection clause and its signifi- cance); Lyall v. DeYoung, 42 Wash. App. 252, 256, 711 P.2d 356, 358-59 _____ _______ (1985), rev. den., 105 Wash.2d 1009 (1986) ("[i]n the absence of fraud ____ ____ the signator is deemed to have had ample opportunity to study the contract and its provisions including recitations which are properly referenced on the back side of the instrument"); H.D. Fowler Co. v. ________________ Warren, 17 Wash. App. 178, 180-81, 562 P.2d 646 (1977) (enforcing ______ attorney fee provision on back of contract despite signatory's claimed ignorance of its presence). There is no indication that Lambert's assent resulted from "overreaching or the unfair use of equal bargain- ing power": Lambert is an experienced merchant who had purchased 26 Christmas trees from the Kysars since 1987 and whose family had sold Christmas trees in Boston since 1953, see Lambert Affidavit at 3. ___ There is nothing to suggest that he was coerced by the Kysars, or that the agreement was anything but an arms-length transaction between parties of roughly equivalent bargaining power. Under these circum- stances, the contracting parties are bound to the forum selected in their contract. D. Application of Forum Selection Clause D. Application of Forum Selection Clause _____________________________________ Lambert asserts, finally, that even if the district court properly dismissed the contract claims under Rule 12(b)(6), the ________ contract-related tort claims were not directly covered by the forum selection clause, and issues of material fact remain in genuine dispute, precluding their summary dismissal under Rule 12(b)(6). Lambert argues, in effect, that he should be permitted to escape the consequences of the parties' forum selection merely by alleging tortious conduct relating to the formation (rather than the perfor- _________ mance) of their contract. We cannot accept the invitation to reward attempts to evade enforcement of forum selection agreements through "artful pleading of [tort] claims" in the context of a contract dispute. Pascalides v. Irwin Yacht Sale North, Inc., 118 F.R.D. 298, __________ ____________________________ 301 (D.R.I. 1988) (quoting Coastal Steel, 709 F.2d at 197); D'Antuono, _____________ _________ 570 F. Supp. at 715. Although the Zapata Court did indicate that a ______ forum selection clause should not be given effect if it was the product of fraud, see 407 U.S. at 12, the Supreme Court subsequently ___ 27 interpreted this exception, in Scherk v. Alberto-Culver Co., 417 U.S. ______ __________________ 506 (1974), to exclude the sorts of claims raised by Lambert. The Court in Scherk stated that ______ [the Zapata fraud exception] does not mean that ______ any time a dispute arising out of a transaction is based upon an allegation of fraud . . . the clause is unenforceable. Rather, it means that [a] . . . forum-selection clause in a contract is not en- forceable if the inclusion of that clause in the _________ __ ____ ______ __ ___ contract was the product of fraud or coercion. ________ Id. at 519 n.14 (emphasis in original); see also Gruson, Forum-Selec- ___ ___ ____ ____________ tion Clauses, 1982 U. Ill. L. Rev. at 165 ("a party should not be ____________ permitted to escape a forum-selection provision by merely calling the validity of the entire contract into question"). The better general rule, we think, is that contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties. Compare General Environmental Science Corp. v. _______ ____________________________________ Horsfall, 753 F. Supp. 664, 668 (N.D. Ohio 1990) (refusing transfer of ________ contract-related tort claims where plaintiff asserted no breach of contract, and cause of action did not directly concern formation or enforcement of contract containing forum selection clause). III III CONCLUSION CONCLUSION __________ As the forum selection clause is valid, exclusive and 28 enforceable, the present action was properly dismissed. Affirmed. ________ 29